RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0049p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 04-2450

MARCO EUGENE FOREMAN,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 03-00276—Gordon J. Quist, District Judge.

Argued: December 9, 2005

Decided and Filed: February 8, 2006

Before: MERRITT, MARTIN, and COLE, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. Joan E. Meyer, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. Joan E. Meyer, Andrew Byerly Birge, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

---

**OPINION**

---

BOYCE F. MARTIN, JR., Circuit Judge. Marco Foreman appeals his sentence for the crime of possession of a firearm by a felon. Foreman raises a *Booker* challenge to his sentence and the United States does not contest this appeal. Foreman also challenges the district court's ruling that a prior conviction for fleeing and eluding in the fourth degree is a crime of violence under the Federal Sentencing Guidelines. For the reasons below, we VACATE Foreman's sentence and REMAND the case for resentencing.

I.

On July 20, 2004, Marco Foreman pled guilty to possessing a firearm after having previously been convicted of a felony offense in violation of 18 U.S.C. § 922(g)(1). At the hearing, Foreman admitted to possession of a firearm and to his previous felony conviction. The district court determined that, under the Guidelines, Foreman's Total Offense level was 21 and Criminal History

1

Category was VI, producing a Guideline range of 77-96 months imprisonment.  A factor in the determination of Foreman's Total Offense level was his prior conviction for fleeing and eluding in the fourth degree.  The district court concluded this was a  "crime of violence" under the Guidelines which raised his Total Offense level six points from a Base Offense Level of 14 to 20.  The district court sentenced Foreman to 77 months in prison, but then added "[i]f it were not for the guidelines, the sentence would be 60 months."  Foreman filed a timely appeal on November 8, 2004.

II.

Foreman claims that his sentence should be vacated based on *United States v. Booker*, 125 S.Ct. 738 (2005).  The United States agrees that a remand is appropriate.  *See United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005).  We therefore vacate and remand for resentencing.

Foreman also argues that the district court erred in qualifying his previous crime of fleeing and eluding in the fourth degree as a "crime of violence."  Although *Booker* held that the Sentencing Guidelines are not mandatory, we must determine whether a specific element of the Sentencing Guidelines applies because a district court must still consider the Guidelines when imposing "a sentence sufficient, but not greater than necessary, to comply with the purposes" of section 3553(a).  18 U.S.C. § 3553(a); *See United States v. Webb*, 403 F.3d 373, 383-84 (6th Cir. 2005).

Legal conclusions regarding the application of the Guidelines are reviewed *de novo*.  *United States v. Gregory*, 315 F.3d 637, 642 (6th Cir. 2003).  The Guidelines set the Base Offense Level for Unlawful Possession of a Firearm at twenty "if the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense."  U.S. SENTENCING GUIDELINES MANUAL § 2K2.1(a)(4)(A).

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that – (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

§ 4B1.2(a).  The commentary to section 4B1.2(a) notes that the definition of "crime of violence" includes any offense in which

> (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

§ 4B1.2 cmt. n. 1.  In this case, the arguments revolve around how to interpret whether an offense "by its nature, presented a serious potential risk of physical injury to another."

The Supreme Court has provided some guidance as to how to determine whether an offense may be considered a crime of violence.  In *Taylor v. United States*, 495 U.S. 575 (1990), the Court addressed what evidence a trial court may consider in answering the question.  The Court concluded that we must take a categorical approach and first consider the statutory definition of the offense.  *Id*.  A categorical approach requires this Court to look at "the fact of the conviction and the statutory definition of the predicate offense" but not the "underlying facts regarding the offense."  *United States v. Martin*, 378 F.3d 578, 581 (6th Cir. 2004) (quoting *United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995)). This approach "avoids subsequent evidentiary enquiries into the factual basis for the earlier conviction," preventing the defendant from having to re-defend previous conduct

which may not have been found true by the previous jury. *Shepard v. United States*, 125 S.Ct. 1254, 1259 (2005).

However, should this initial inquiry under the categorical approach fail to be determinative, a court may consider "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented" in determining whether the crime was a crime of violence. *Id*. at 1257. Although both *Shepard* and *Taylor* addressed whether burglary could be considered a violent felony under the Armed Career Criminal Act, the application of these rules to the definition of "crime of violence" under the Sentencing Guidelines has become an accepted practice in this Circuit. *See United States v. Arnold*, 58 F.3d 1117, 1121-22 (6th Cir. 1995); *United States v. Burgin*, 388 F.3d 177, 186 (6th Cir. 2004).

### III.

The crime in this case is the Michigan crime of fleeing and eluding in the fourth degree. Under the statute, the crime is

> (1) A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the vehicle, extinguishing the lights of the vehicle, or otherwise attempting to flee or elude the police or conservation officer. This subsection does not apply unless the police or conservation officer giving the signal is in uniform and the officer's vehicle is identified as an official police or department of natural resources vehicle.

> (2) Except as provided in subsection (3), (4), or (5), an individual who violates subsection (1) is guilty of fourth-degree fleeing and eluding, a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

M.C.L. § 750.479a.

This Court has had two occasions to determine whether offenses similar to the one in this case are in fact "crimes of violence." In *United States v. Harris*, 165 F.3d 1062 (6th Cir. 1999), this Court held that the Tennessee crime of escape is inherently a "crime of violence." We reasoned that "[a] defendant who escapes from a jail is likely to possess a variety of supercharged emotions, and in evading those trying to recapture him, may feel threatened by police officers, ordinary citizens, or even fellow escapees. Consequently, violence could erupt at any time." *Id*. at 1068 (quoting *United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994)).

In *United States v. Martin*, this Court held that the Michigan crime of fleeing and eluding in the third degree is a "crime of violence." 378 F.3d at 584. The difference between third and fourth degree is that third degree fleeing and eluding requires proof of an additional element from one of the following:

> (a) The violation results in a collision or accident.

> (b) A portion of the violation occurred in an area where the speed limit is 35 miles an hour or less, whether that speed limit is posted or imposed as a matter of law.

> (c) The individual has a prior conviction for fourth-degree fleeing and eluding, attempted fourth-degree fleeing and eluding, or fleeing and eluding under a current or former law of this state prohibiting substantially similar conduct.

M.C.L. § 750.479a(3).

In *Martin*, this Court compared the general crime of fleeing and eluding to the crime of escape, concluding that both involve heightened emotions and adrenaline levels of the parties involved. 378 F.3d at 582-83. Relying heavily on how fleeing and eluding is similar to the crime of escape, the *Martin* court held that fleeing and eluding presented an even greater risk of injury than escape. *Id.* at 583. This greater risk is because fleeing inherently puts two parties at risk – the person fleeing and the officer in pursuit – while escape does not necessarily include a pursuing officer. *Id.* An individual committing fleeing and eluding makes "a deliberate choice to disobey a police officer" by which "the motorist provokes an inevitable, escalated confrontation with the officer" similar to the danger involved in an escape. *Id.* at 582.

The legal question posed before this Court is similar to the one addressed in *Martin*. We must now take the analysis one step further to determine whether *fourth degree* fleeing and eluding is a crime of violence rather than the *third degree* offense at issue in *Martin*. Although this Court discussed issues relevant to the fourth degree offense in *Martin*, the question was clearly left open by that panel for future discussion. 378 F.3d at 584 ("Even if it were true that the fourth-degree offense . . . does not pose a serious risk of injury, as Martin alleges, case law makes clear that we must look at the conduct charged in the indictment when the statutory offense potentially covers violent and non-violent crimes.").

This Court, in *Martin*, addressed each of the three additional elements which could lead to third degree fleeing and eluding. In our examination of both fleeing in a low speed area and causing an accident, we placed heavy emphasis on the word "potential" in the standard "serious potential risk of physical injury." *Id.* at 582-83. We found such a potential existed and, therefore, under the categorical approach, held that fleeing and eluding with either of these two elements could be considered a "crime of violence." *Id.* However, we failed to come to a similar result with the third potential element: a previous violation of fourth degree fleeing and eluding. *Id.* at 584. Instead, this Court held that because the categorical approach was unclear as to this element of third degree fleeing and eluding we had to turn to the facts of the incident, as allowed by *Shepard*. *Martin*, 378 F.3d at 584. In examining the charging document, we held that Martin had been charged with third degree fleeing and eluding based on "caus[ing] an accident, or fleeing in a 35-mile-per-hour zone, or both." *Id.* Therefore, his sentence was held to have been appropriately enhanced by the district court while leaving the question of whether fourth degree fleeing and eluding was a "crime of violence" unresolved. *Id.*

We are now faced, in this case, with resolving that question. Like in *Martin*, we conclude that fourth degree fleeing and eluding has a *potential* risk of physical injury to another. However, for a prior crime to be one "of violence" it must have "*serious* potential risk of physical injury." U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(a) (emphasis added). In *Martin*, we emphasized the *potential* risk of harm to another; however we must also give weight to how the word "serious" modifies potential risk. Nearly any criminal offense has the *potential* risk of physical injury to another. *See United States v. Serna*, – F.3d –, 2006 WL 156731 (9th Cir. January 23, 2006) ("Serna's prior conviction was for possession of an object. Almost any object – a car, a golf club, even a pair of nail clippers – can be used to cause physical injury. . . Were an object's potential for causing physical injury enough to render illegal possession thereof a crime of violence, almost all possessory crimes would be crimes of violence"). According to the Guidelines, the potential risk must be *serious* in order for the offense to be a "crime of violence." Therefore, the potential risk can not be based on conjecture, but must be "weighty, important, dangerous, or potentially resulting in death or other severe consequences." BLACK'S LAW DICTIONARY (8th ed. 2004).

In *Martin*, we found that the general crime of fleeing and eluding had a potential risk of physical injury. 378 F.3d at 582-83. What made the potential risk serious, in that case, was the

presence of the additional elements of fleeing in a low speed zone or causing an accident. *Id.* at 584. Given the absence of those elements in this case, we hold that the categorical approach is not determinative of whether fourth degree fleeing and eluding is a "crime of violence." Therefore, we must look to the *Shepard* sources in order to further examine whether fourth degree fleeing and eluding is a "crime of violence." 125 S.Ct. at 1259 ("the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented"). Where the facts demonstrate a *serious* potential risk of physical injury to another, then the application of the "crime of violence" enhancement is appropriate. Where the facts indicate otherwise, it is not. Because the district court found the categorical approach determinative, we must vacate its decision and remand for resentencing.

Finally, in *United States v. Booker*, 123 S.Ct. 738 (2005), the Supreme Court invalidated the mandatory use of the Sentencing Guidelines and declared them "effectively advisory." We have stated that "[o]nce the appropriate advisory Guideline range is calculated, the district court throws this ingredient into the section 3553(a) mix." *United States v. McBride*, – F.3d –, 2006 WL 89159, *5 (6th Cir. January 17, 2006). Now that section 3553(a) is the focal point, and the Guidelines sentence is merely advisory, even if the district court determines that Foreman's prior offense was a "crime of violence," that is "not the end of the sentencing inquiry; rather, it is just the beginning." *Id.* at *4. Section 3553(a) instructs district courts to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth in that section.

Regardless of whether the district court determines that Foreman's prior offense was a crime of violence, the district court is not bound to adhere to the Guideline range. Even if the district court determines that Foreman's offense is a crime of violence, the court may conclude that the sentence ought to be lower than the Guideline range due to section 3553(a). Alternatively, should the court determine the crime is not one of violence, it may consider a higher sentence in light of the 3553(a) factors. We do not intimate an opinion either way. We include this only to make the point that the "crime of violence" inquiry is not the end of the sentencing determination. If the district court determines that section 3553(a) does not require it to impose the Guideline-recommended sentence based on an over or under inflated significance attributed to Foreman's prior convictions, this Court will later review that decision for reasonableness.[1]

Finally, in *United States v. Williams*, we held that a Guidelines sentence is afforded a presumption of reasonableness. – F.3d –, No. 05-5416 (6th Cir. January 31, 2006). Although this statement seems to imply some sort of elevated stature to the Guidelines, it is in fact rather unimportant. *Williams* does not mean that a sentence outside of the Guidelines range – either higher or lower – is presumptively *un*reasonable. It is not. *Williams* does not mean that a Guidelines sentence will be found reasonable in the absence of evidence in the record that the district court considered all of the relevant section 3553(a) factors. A sentence within the Guidelines carries with it no implication that the district court considered the 3553(a) factors if it is not clear from the record, because, of course, under the Guidelines as mandatory, a district court was not required to consider the section 3553(a) factors. It would be unrealistic to now claim that a Guideline sentence implies consideration of those factors.

Moreover, *Williams* does not mean that a sentence within the Guidelines is reasonable if there is no evidence that the district court followed its statutory mandate to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing in section 3553(a)(2). Nor is it an excuse for an appellate court to abdicate any semblance of meaningful

---

[1] It is worth noting that a district court's job is not to impose a "reasonable" sentence. Rather, a district court's mandate is to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of section 3553(a)(2). Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task.

review. Appellate review is more important *because* the Guidelines are no longer mandatory. Under the mandatory Guideline system, appellate review was not integral to assuring uniformity. Now, with the advisory Guidelines and more sentencing variables, appellate review is all the more important in assuring uniformity and reducing sentencing disparities across the board. *See* S. REP. NO. 98-225, at 151 (1983); *United States v. Mickelson*, – F.3d –, 2006 WL 27687 (8th Cir. January 6, 2006).

## IV.

Based on the above discussion, we VACATE Foreman's sentence, and REMAND this case for resentencing in light of *Booker*.