RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0412p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 05-6480

CLYDE ARMSTEAD,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 04-20400—Bernice B. Donald, District Judge.

Argued: September 20, 2006

Decided and Filed: November 6, 2006

Before: ROGERS and GRIFFIN, Circuit Judges; OBERDORFER, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Mary C. Jermann-Robinson, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. Katrina U. Earley, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Mary C. Jermann-Robinson, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. Katrina U. Earley, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

---

**OPINION**

---

OBERDORFER, District Judge. After a jury trial, the United States District Court for the Western District of Tennessee, on September 14, 2005, convicted defendant-appellant Clyde Armstead as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Finding that Armstead had a prior conviction for a "crime of violence" within the meaning of § 4B1.2 of the United States Sentencing Guidelines (U.S.S.G. or Guidelines), the district court imposed a sentence of sixty-six months imprisonment, two years supervised release, and a $100 fine. Defendant appeals the conviction and the sentence. We affirm the conviction, but vacate the sentence, and remand for

---

[*] The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

further proceedings and resentencing because the present record does not justify the district court's conclusion that Armstead's prior conviction was for a crime of violence.

## I. BACKGROUND

There was substantial evidence before the jury that:

Early on the morning of November 22, 2003, Kelvin and Toni Butler were awakened by a disturbance at their Memphis, Tennessee, apartment building. Standing outside their window was Armstead, drunk and yelling that someone in the Butlers' apartment owed him ten dollars. He was referring to the Butlers' neighbor, a woman known only as Carla, who had once lived in the Butlers' apartment after being evicted from her own. The Butlers told Armstead that Carla no longer lived with them, and indeed she had moved out of their apartment the day before.

Undeterred, Armstead later that afternoon returned to the Butlers' apartment. He demanded that the Butlers pay him the ten dollars, threatening harm if they did not. As Armstead proceeded to walk up the steps toward the Butlers' unit, they noticed a gun sticking out of his pocket. When he reached the top of the steps, they observed him pull out an old, rusty gun and point it at them.

Mrs. Butler, hysterical and upset, called the police. As the police were arriving, Armstead ran into a neighboring apartment complex. One of the officers noticed him there bending down near an apartment balcony. Searching that area, the police discovered an old, rusty gun in one of the trash cans. The Butlers identified the gun as the one Armstead had pointed at them. The officers arrested Armstead.

In time, a federal grand jury returned a one-count indictment charging Armstead with being a previously convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g). At the ensuing trial, several witnesses, including the Butlers and the police officers, testified to the foregoing facts concerning the November 22 incident. On May 16, 2005, the jury, advised that Armstead was a convicted felon, returned a verdict of guilty.

The presentence report concluded that Armstead's offense level should be increased pursuant to § 4B1.2 of the Guidelines because he had been previously convicted of a "crime of violence." *See* U.S.S.G. §§ 2K2.1(a)(4)(A) and 4B1.2(a). Two Tennessee indictments alleged that in 1994 Armstead

> did unlawfully and knowingly, other than by accidental means, neglect . . . a child under eighteen (18) years of age, so as to adversely affect the health and welfare of the said [child], *resulting in serious bodily injury, to wit: burns to the body, to the said [child], in violation of [Tennessee Code §] 39-15-402*.

Sentencing Hr'g Exs. 1 & 2 (Sept. 8, 2005) (emphasis added). At the subsequent sentencing hearing defense counsel argued that Armstead's 1994 guilty plea in, and conviction by, the Shelby County court for "attempted child abuse," a lesser-included offense of the crime charged in the indictments, was not a conviction for a crime of violence within the meaning of § 4B1.2.

At the sentencing hearing, the district court had before it the two Tennessee indictments and the presentence report. The court ruled as follows:

> [L]ooking at the [Shelby County] indictments, the applicable law, and considering the Sixth Circuit approach, the court finds that in this case all of the underlying facts support the notion that this was a crime of violence.

Sentencing Hr'g Tr. at 25 (September 8, 2005).

This appeal followed.

## II.  DISCUSSION

A.     *Sufficiency of the Evidence*

We review a criminal judgment for sufficiency of the evidence under a familiar standard. Reversal is appropriate "only if this judgment is not supported by substantial and competent evidence upon the record as a whole." *United States v. Blood*, 435 F.3d 612, 618 (6th Cir. 2006). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *Blood*, 435 F.3d at 618.

Here, there was ample evidence that defendant (1) had a prior felony conviction and (2) was in possession of a firearm that (3) had traveled in or affected interstate commerce, in violation of 18 U.S.C. § 922(g). *United States v. Smith*, 320 F.3d 647, 655 (6th Cir. 2003); *United States v. Walker*, 160 F.3d 1078, 1087 (6th Cir. 1998). Elements (1) and (3) were stipulated to at trial; the testimony of the police officers and the Butlers was more than sufficient to establish the element of possession. *See United States v. Caraway*, 411 F.3d 679, 682 (6th Cir. 2005). Whether that testimony was credible is for the jury to determine, not this court. *See United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004).

B.     *The "Crime of Violence" Determination*

We review *de novo* the district court's legal conclusion that Armstead's prior conviction was for a crime of violence within the meaning of § 4B1.2 of the Guidelines. *See United States v. Hargrove*, 416 F.3d 486, 494 (6th Cir. 2005). That section, in relevant part, defines a crime of violence as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a); *see also id.* §§ 2K2.1 & cmt. n.1 and 4B1.2 cmt. n.1.

The district court looked at the state court indictments charging "aggravated child abuse" as evidence that Armstead's conviction of the lesser-included offense of "attempted child abuse" on his plea of guilty was a conviction for a crime of violence. The question presented is whether such reliance was appropriate.

1.    *The Categorical Approach*

In *Taylor v. United States*, 495 U.S. 575 (1990), the Supreme Court adopted a "categorical approach" to sentencing courts' appraisals of prior convictions in circumstances resembling those before us here. Under this approach, a sentencing court generally may look "only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions" to determine whether a sentence should be enhanced. *See id.* at 600. One of the policies animating the Court's adoption of this approach was to avoid "the practical difficulties and potential unfairness" of permitting a sentencing court to relitigate the facts and delve into the details of a prior conviction. *See id.* at 601. Nonetheless, the Court in *Taylor* also permitted, in cases where the statutory definition is ambiguous, a court to "go beyond the mere fact of conviction" and examine the charging papers or jury instructions to determine whether the convicting jury necessarily found all the requisite elements of an offense that would qualify for a federal sentencing enhancement. *Id.* at 602; *see*, *e.g.*, *United States v. Kaplansky*, 42 F.3d 320, 325 (6th Cir. 1994) (en banc).

The Court in *Taylor* also noted, without directly addressing the issue, that in cases where the guilty plea is to a lesser-included offense of the one charged in the original indictment, it might be "unfair" to base a sentence enhancement on the crime alleged in the original indictment. *See Taylor*, 495 U.S. at 601-02. After *Taylor*, the courts of appeals took a variety of approaches in pleaded cases, and eventually the issue arose in the Supreme Court in *Shepard v. United States*, 544 U.S. 13 (2005).

*Shepard* involved a guilty plea to a statutory burglary offense that embraced both generic burglary (burglary into buildings) which is subject to a federal sentence enhancement and non-generic burglary (burglary into other structures, *e.g.*, boats or vehicles) which is not. *Id.* at 16-17. The Supreme Court, casting its decision as adherence to the "heart" of *Taylor*, *id.* at 23, confirmed that *Taylor* applied to convictions based on guilty pleas. *Id.* at 19. It further held that in such cases, a court's inquiry is

> *limited to* the terms of the charging document, the terms of a plea
> agreement or transcript of colloquy between judge and defendant in
> which the factual basis for the plea was confirmed by the defendant,
> or to some comparable judicial record of this information.

*Id.* at 26 (emphasis added). Police reports and criminal complaint applications would not do. To be sure, the rulings applied not to the Sentencing Guidelines' definition of a crime of violence but to the Armed Career Criminal Act's definition of burglary, but faithfulness to this Circuit's precedents mandates application of *Shepard* as well as *Taylor* to § 4B1.2 of the Guidelines. *See United States v. Foreman*, 436 F.3d 638, 641 (6th Cir. 2006).

So since *Shepard*, to determine whether a prior conviction pursuant to a guilty plea constitutes a crime of violence, the sentencing court must, *first*, decide whether the statutory definition, by itself, supports a conclusion that the defendant was convicted of a crime of violence. If the statutory definition embraces both violent and non-violent crimes or is otherwise ambiguous, the court, *second*, may look to the "charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information" to determine whether the violent or non-violent aspect of the statute was violated. *Shepard*, 544 U.S. at 26; *see United States v. Galloway*, 439 F.3d 320, 323 (6th Cir. 2006); *Foreman*, 436 F.3d at 641.

2.    *Application of the Categorical Approach*

First we consider whether the statutory description of attempted child abuse supports a conclusion that Armstead was convicted of a prior crime of violence. The parties agree that

defendant in 1994 pled guilty to, and was convicted of, attempted child abuse in violation § 39-15-401 of Tennessee's Criminal Code.[1]  As noted above, to fit the Guidelines' definition of a "crime of violence" the prior crime must involve either (1) the use, attempted use, or threatened use of physical force, or (2) conduct that otherwise presents a serious potential risk of physical injury. U.S.S.G. § 4B1.2(a).  Significantly, the Guidelines also include an attempt to commit such crimes as a crime of violence.  *Id.* § 4B1.2 cmt. n.1.

This court has already construed Tennessee's child abuse statute to be ambiguous as to these § 4B1.2(a) requirements.  The statute provides in relevant part as follows:

> Any person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare is guilty of a Class A misdemeanor; provided, that if the abused child is six (6) years of age or less, the penalty is a Class D felony.

Tenn. Code § 39-15-401(a).  This court has held that § 39-15-401, by its statutory definition alone, "does not necessarily require the use, attempted use, or threatened use of physical force," and, moreover, "provides an insufficient basis upon which to determine whether a prior conviction . . . involves conduct that presents a serious potential risk of physical injury to another."  *United States v. Bass*, 315 F.3d 561, 565 (6th Cir. 2002) (quotation marks omitted).

The statutory definition being ambiguous, we turn our attention to other cognizable records under *Shepard*.  *See United States v. Sawyers*, 409 F.3d 732, 737 (6th Cir. 2005).  The appellate record contains Armstead's state criminal judgment and the original indictments.

A judgment falls within *Shepard*'s exception for "some comparable judicial record" to a plea colloquy or agreement, and therefore may be examined by a sentencing court.  *See United States v. Beasley*, 442 F.3d 386, 393-94 (6th Cir. 2006).  Here, the judgment shows that defendant was convicted of attempted child abuse, in violation of Tennessee Code §§ 39-12-101 (defining criminal attempt) and 39-15-401 (defining child abuse).  The judgment also shows that defendant was convicted of a felony and sentenced to two years incarceration.  Based on this information, we conclude that defendant had committed a crime "punishable by imprisonment for a term exceeding one year," U.S.S.G. § 4B1.2(a), an element of the Guidelines' definition of a crime of violence.  It remains to be seen whether he also committed a crime involving physical force against another or a serious risk of injury to another, *id.* § 4B1.2(a)(1) & (2).

For that determination, we turn to the indictments, which describe in greater detail the nature of defendant's prior allegedly criminal conduct.  The indictments charge that defendant

> did unlawfully and knowingly, other than by accidental means, neglect . . . a child under eighteen (18) years of age, so as to adversely affect the health and welfare of the said [child], *resulting in serious bodily injury, to wit: burns to the body, to the said [child], in violation of [Tennessee Code §] 39-15-402*.

Sentencing Hr'g Exs. 1 & 2 (Sept. 8, 2005) (emphasis added).  Thus, the indictments charged a crime to which defendant never pleaded guilty, § 39-15-402, and described aggravated child abuse,

---

[1] Armstead was convicted under the 1994 version of the Tennessee Code.  The child abuse statute has since been revised more than once.  *See*, *e.g.*, 2005 Tenn. Pub. Acts, ch. 487, § 1.  We refer throughout this opinion to the 1994 version.

not child abuse under § 39-15-401. It is noteworthy that the original indictments would accurately reflect the charges to which Armsted pleaded, *if* they did not allege the burn injuries. That would leave the court with only the unemphasized language to review. That language describes child neglect, which is a form of statutory child abuse under § 39-15-401, Armstead's crime of conviction. *See State v. Mateyko*, 53 S.W.3d 666, 668 n.1 (Tenn. 2001). The emphasized language was the only evidence of a violent crime the sentencing court had before it.

The obvious question, then, is whether the emphasized language about the burns is cognizable evidence on which to base a federal sentencing enhancement. This court previously encountered a similar question in *United States v. Arnold*, 58 F.3d 1117, 1124 (6th Cir. 1995). There, the original indictment charged the defendant with aggravated sexual assault. He pleaded nolo contendere to assault with intent to commit sexual battery.[2] Because the pleaded-to crime encompassed both assault by force and by fraud, *i.e.*, both violent and non-violent conduct, the court remanded to the district court to determine which form of the assault statute defendant violated. *See id.* at 1122, 1124. The remand instructed the district court to "limit its examination to only those charges in the indictment that are essential to the offense to which defendant entered his plea." *Id.* at 1124; *see United States v. Bernal-Aveja*, 414 F.3d 625, 628 (6th Cir. 2005).

The rule stated in *Arnold* applies as well to the present appeal. As in *Arnold*, defendant here was charged with a more serious crime, aggravated child abuse, than the one to which he pled guilty, attempted child abuse. We thus apply this rule and limit our examination of the original indictments to the elements of the charges that are essential to defendant's plea of guilty to attempted child abuse.

The final clause of the indictments, alleging "serious bodily injury, to wit: burns to the body, to the said [child]," applies to aggravated child abuse as defined by Tennessee Code § 39-15-402, and is not essential to the crime of child abuse as defined by Tennessee Code § 39-15-401. *Arnold* precludes consideration of this clause. Because no other evidence of violent conduct was before the district court, we conclude that the finding of a crime of violence based on the indictments alone was error. As this court has stated, where "[a defendant] did not plead guilty to, and therefore was not actually convicted of, the aggravated burglary charge contained in the indictment, the indictment alone is insufficient to meet the government's burden of proving that [he] was previously convicted of a 'crime of violence.'" *See Bernal-Aveja*, 414 F.3d at 628.

In pleading to a lesser-included offense of the charged crime, defendant necessarily admitted that he "unlawfully and knowingly, other than by accidental means, neglect[ed] . . . a child under eighteen (18) years of age, so as to adversely affect the health and welfare of the said [child]," but he did not necessarily admit that his neglect "result[ed] in serious bodily injury, to wit: burns to the body, to the said [child]." Perhaps defendant's neglect did cause serious injuries; perhaps it created a serious potential risk of injury. For purposes of federal sentencing, however, we do not know, and cannot know, until and unless we are presented with additional evidence in a form approved of by the Supreme Court. *See Shepard*, 544 U.S. at 26.

As a final matter, we do not reach the government's argument that we may consider the presentence report to support the sentencing court's finding of a crime of violence. While certain cases may have implied that such consideration is appropriate, *see*, *e.g.*, *United States v. Martin*, 378 F.3d 578, 582 (6th Cir. 2004); *Bass*, 315 F.3d at 565-66, those cases were decided before the Supreme Court's decision in *Shepard*. In any event, the presentence report here merely parrots, virtually verbatim, the allegations in the original indictments; it could not have had an effect on the

---

[2] Pleading nolo contendere has similar legal effect in this context as pleading guilty. *See Arnold*, 58 F.3d at 1124 n.5.

court's decision any different from that of the indictments. We thus assume for purposes of this appeal that the court considered the indictments alone. Consequently, the Circuit's cases concerning consideration of presentence reports are inapposite to this appeal.

C.          *Instructions on Remand*

Because the sentencing court erroneously relied on the indictments as the only basis for its determination that defendant committed a crime of violence, we vacate the sentence. We are aware, of course, of the "effectively advisory" nature of the Guidelines, *United States v. Booker*, 543 U.S. 220, 245 (2005). But "[a]n incorrect application of the guidelines requires resentencing under the post-*Booker* sentencing regime." *See United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005) (quoting *United States v. Scott*, 405 F.3d 615, 616 (7th Cir. 2005)). We therefore need not consider whether imposition of the sentence under review was "reasonable" within the meaning of *Booker* and its progeny in this Circuit, *see*, *e.g.*, *United States v. Webb*, 403 F.3d 373 (6th Cir. 2005).

Finally, although in like contexts this court has on occasion remanded with instructions to simply remove the improper sentencing enhancement, *see Hargrove*, 416 F.3d at 499 n.5, the more normal and appropriate course is to remand for further proceedings. *See id.*; *see also Foreman*, 436 F.3d at 643; *Sawyers*, 409 F.3d at 742; *Arnold*, 58 F.3d at 1124. The government at oral argument specifically requested to be given the opportunity to supplement the sentencing record with *Shepard*-approved materials, if any, that it did not have opportunity to submit at the initial sentencing hearing. We grant that request.

## III.  CONCLUSION

For the foregoing reasons, the judgment of conviction is affirmed, the sentence is vacated, and the case is remanded with instructions to permit the government to supplement the sentencing record with cognizable materials and for further proceedings consistent with this opinion.