**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0134n.06
Filed: February 16, 2007

**No. 05-6904**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

        **Plaintiff-Appellee,**

v.

KEITH ROBINSON,

        **Defendant-Appellant.**

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

**BEFORE: MOORE and CLAY, Circuit Judges; BELL, District Judge.**[*]

    **BELL, District Judge.** Defendant Keith Robinson pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He was sentenced to fifty-one months in prison. The firearms that defendant unlawfully possessed were found in a search of Sabrina Sampson's home. Defendant filed a motion to suppress the firearms and the statements he made to police while at Ms. Sampson's home. The district court found that the search of Ms. Sampson's home was lawful and that defendant's statements about the locations of the firearms were not taken in violation of *Miranda*. Defendant appeals the district court's denial of his motion to suppress as to both the

_____

[*]The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

lawfulness of the search and the statements being taken in conformance with *Miranda*.

Defendant also appeals the sentence imposed by the district court. For the reasons set forth

in this opinion, we **AFFIRM** the district court's denial of the motion to suppress and the

sentence imposed by the district court.

I.

Late on the morning of November 14, 2004, Officers Demetrius Golden and Eddie

McClain of the Jackson Police Department were dispatched in response to a domestic

disturbance reported by Ms. Sampson. Upon arrival Ms. Sampson indicated that defendant

was inside the house. Ms. Sampson told the officers that defendant had assaulted her the

night before and that she had directed him to leave. Ms. Sampson then gave Officer Golden

a key to the house and advised the officers that defendant had firearms in the house.

Officer Golden then approached the front door, with Officer McClain behind him.

While at the front door Officer Golden called for defendant. Eventually defendant came

down the stairs. After defendant was downstairs, Officer Golden entered the house and

patted him down to check for weapons. Defendant, Officer Golden and Officer McClain

then went into the living room area. Around this time Officer Scandrett entered

Ms. Sampson's house and joined the other two officers in the living room.[1] The officers

began questioning defendant about the alleged assault. Between five and ten minutes after

---

[1]Officers Golden and McClain identified the third officer as Officer Scandrett, however, defendant identified the third officer as Tikal Greer. Though the record is inconsistent as to the identity of the third officer, there is no dispute as to there having been three officers in the living room.

the officers entered the house, one of them asked defendant whether he had any firearms.

Defendant twice denied that he had any firearms, but then acknowledged that he had firearms

at the top of the stairwell and in a closet in an upstairs bedroom. Officer McClain then went

upstairs and confirmed the locations of the firearms. Officer McClain's search was limited

to the two locations identified by defendant.

Officer McClain returned to the living room without moving the firearms. At some

point after the firearms were located the officers learned that defendant was on parole and

defendant provided his parole card. Defendant was then arrested and taken to the police

station. After being given *Miranda* warnings at the police station defendant gave a statement

to Lieutenant Patrick Willis.

On March 31, 2005, defendant was indicted as a felon in possession of firearms.

Defendant filed a motion to suppress the firearms as the fruit of an unlawful search and to

suppress his statements about the locations of the firearms as having been taken in violation

of *Miranda*. On August 3, 2005, the district court held a hearing on the motion to suppress

and denied defendant's motion. Defendant then changed his plea in response to the denial

of his motion to suppress. Defendant entered a plea of guilty and pursuant to FED. R. CRIM.

P. 11 he reserved the right to appeal the denial of the motion to suppress.

On October 31, 2005, at the sentencing hearing, defendant requested that the district

court consider that he has six dependent children, that the firearms were a gift from his late

father and that one of the firearms was disassembled. The district court reviewed the

calculation of defendant's guideline sentencing range and determined that it had been

correctly calculated in the pre-sentence report at fifty-one to sixty-three months. The district court sentenced defendant to fifty-one months in prison and two years of supervised release.

## II.

Defendant argues that the officers did not have consent to search for the firearms and that the search was therefore in violation of his Fourth Amendment rights. He also argues that his statements about the locations of the firearms were elicited in violation of *Miranda* because he was in custody and had not received *Miranda* warnings.

## A.

Defendant appeals the district court's denial of his motion to suppress on the ground that Officer McClain's search for the firearms exceeded the reasonable scope of Ms. Sampson's consent. On appeal, we review the district court's factual findings made in consideration of a motion to suppress for clear error and its legal conclusions *de novo*. *United States v. Smith*, 263 F.3d 571, 581 (6th Cir. 2001). "When reviewing a denial of a motion to suppress evidence, [we] must consider the evidence in the light most favorable to the government." *United States v. Wellman*, 185 F.3d 651, 654-55 (6th Cir. 1999). "The district court's determination of whether a search exceeded the scope of consent is a question of fact that we review for clear error." *United States v. Garrido-Santana*, 360 F.3d 565, 570 (6th Cir. 2004).

"The Fourth Amendment requires that searches of the home be reasonable." *United States v. Williams*, 354 F.3d 497, 503 (6th Cir. 2003). Searches of "'a home without a warrant are presumptively unreasonable.'" *O'Brien v. City of Grand Rapids*, 23 F.3d 990,

996 (6th Cir. 1994) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). The presumption of unreasonableness "does not apply, however, to situations in which voluntary consent has been obtained . . . from the individual whose property is searched . . . ." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (citations omitted). "When seeking to justify a search based on consent, the government has the burden of showing by a preponderance of the evidence that the consent was 'freely and voluntarily given,' and was not the result of coercion, duress, or submission to a claim of authority." *United States v. Bueno*, 21 F.3d 120, 126 (6th Cir. 1994) (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). "'When law enforcement officers rely upon consent as the basis for a warrantless search, the scope of the consent given determines the permissible scope of the search.'" *United States v. Henry*, 429 F.3d 603, 616 (6th Cir. 2005) (quoting *Garrido-Santana*, 360 F.3d at 575). "'The standard for measuring the scope of a [person]'s consent under the Fourth Amendment is that of 'objective' reasonableness - what would the typical reasonable person have understood by the exchange between the officer and the [person]?'" *Id.* at 616 (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). "'Generally, the expressed object of the search defines the scope of that search.'" *Garrido-Santana*, 360 F.3d at 576 (quoting *Jimeno*, 500 U.S. at 251).

Ms. Sampson summoned the police on the November 14, 2004, to have the police remove defendant from her house. When Officer Golden arrived she advised him that defendant had assaulted her the previous night, that he was in the house and that he had firearms. Ms. Sampson then provided Officer Golden with a key to her house. The district

court concluded that Ms. Sampson had given the officers express consent to enter her house by giving Officer Golden the key. (J.A. 90.) The district court also concluded that Ms. Sampson had given at least implied consent to search her house for defendant. (*Id.*) Ms. Sampson's consent was freely and voluntarily given as she had initiated the contact with the police and she gave Officer Golden the key to her house without him having made any such request. (J.A. 45-46, 72, 74, 88.) While the district court found the search lawful, the district court did not make an explicit finding as to the scope of consent as it related to the firearms. (J.A. 90.) By advising the police that defendant had firearms and then providing Officer Golden with a key Ms. Sampson was implicitly consenting to the officers searching for the firearms. If a person advises a police officer that there is a potentially dangerous person in her house, that the person is in possession of firearms and then consents to a search of her house, an objectively reasonable person would expect the officer to search for both the potentially dangerous person and the firearms. This objectively reasonable expectation derives from the threat posed by the potentially dangerous person being increased by that person's possession of firearms. In consideration of this, the district court's conclusion that Ms. Sampson consented to the search for the firearms is not clearly erroneous. Given that Ms. Sampson consented to the search for the firearms, the district court properly denied defendant's motion to suppress the firearms.

B.

Defendant appeals the district court's denial of his motion to suppress his statements about the locations of the firearms. Defendant argues that he was in custody but had not been

given *Miranda* warnings at the time he responded to Officer McClain's question about the locations of the firearms. There is no dispute that the officers did not give defendant *Miranda* warnings prior to Officer McClain questioning him about the locations of the firearms. There is also no dispute that the questions posed to defendant by Officer McClain constituted interrogation. Therefore the dispute revolves around whether defendant was in custody when he was questioned about the locations of the firearms.

"The question of whether defendant was 'in custody' is a mixture of law and fact, and is thus reviewed de novo." *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998) (citing *Thompson v. Keohane*, 516 U.S. 99, 100-03 (1995)).

A suspect cannot be subjected to a custodial interrogation until he or she has been given *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). "A suspect is 'in custody' for purposes of receiving *Miranda* protection if there has been a 'formal arrest or restraint on freedom of movement.'" *Mason v. Mitchell*, 320 F.3d 604, 631 (6th Cir. 2003) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam)). In determining whether a suspect was in custody we look to the totality of the circumstances "to determine 'how a reasonable man in the suspects's [*sic*] position would have understood the situation.'" *Salvo*, 133 F.3d at 948 (quoting *United States v. Phillip*, 948 F.2d 241, 247 (6th Cir. 1991)).

The first factor we consider is whether a reasonable person in defendant's "situation would have believed that [he] was free to terminate the interrogation and leave." *United*

*States v. Crossley*, 224 F.3d 847, 861 (6th Cir. 2000) (citing *Salvo*, 133 F.3d at 950). We

also consider:

> (1) the purpose of the questioning; (2) whether the place of the questioning
> was hostile or coercive; (3) the length of the questioning; and (4) other indicia
> of custody such as whether the suspect was informed at the time that the
> questioning was voluntary or that the suspect was free to leave or to request
> the officers to do so; whether the suspect possessed unrestrained freedom of
> movement during questioning; and whether the suspect initiated contact with
> the police or voluntarily admitted the officers to the residence and acquiesced
> to their requests to answer some questions.

*Id.* (quoting *Salvo*, 133 F.3d at 950).

On November 14, 2004, after Officer Golden saw defendant come downstairs,

Officers Golden and McClain entered Ms. Sampson's house. As Officer Golden entered the

house he had his sidearm out of the holster, but he was still holding his sidearm down at his

side. (J.A. 57.) Officer McClain had his sidearm holstered as he entered the house. (J.A.

62.) After the police officers entered the house, Officer Golden then completed a pat-down

of defendant to check for weapons. Shortly thereafter Officer Scandrett joined the other two

officers in the living room. At the suppression hearing, defendant stated that Officer Golden

handcuffed him after the pat-down for weapons. (J.A. 81.) Officers Golden and McClain

testified that defendant was not handcuffed at that time. (J.A. 52, 62.) The district court did

not make an explicit finding as to the credibility of this testimony or whether defendant was

handcuffed. A review of the district court's recitation of the facts and conclusion as to

whether defendant was in custody indicates that the district court concluded that the police

officers' testimony was more credible and that defendant was not handcuffed. (J.A. 88-92.)

"In the absence of a clear basis in the record for rejecting the district court's credibility determinations, we are bound by those determinations." *United States v. Hudson*, 405 F.3d 425, 442 (6th Cir. 2005). Therefore our analysis of whether defendant was in custody is based on defendant not having been handcuffed. After about five to ten minutes Officer McClain asked defendant about the locations of the firearms. Defendant twice responded that there were not any firearms in the house. (J.A. 82-83.) After being asked a third time defendant advised the officers of the locations of the firearms.

Defendant testified that he did not feel that he was free to leave during the questioning in the living room. (J.A. 86.) Defendant also testified that he felt that he had to answer the questions posed by the officers. (*Id.*) "A reviewing court determines whether or not a defendant is in custody by considering 'the objective circumstances of the interrogation,' rather than 'the subjective views harbored by either the interrogating officers or the person being questioned.'" *Biros v. Bagley*, 422 F.3d 379, 389 (6th Cir. 2005) (quoting *Mason*, 320 F.3d at 631). Thus defendant's subjective views do not implicate our analysis of whether defendant was in custody.

A reasonable person in defendant's position would not have believed he was free to terminate the interrogation. Officer Golden had called for defendant to come downstairs. As defendant had come downstairs, he encountered Officer Golden, who had his sidearm drawn, though Officer Golden never pointed his sidearm at defendant. Then after being patted down, the police officers directed defendant to the living room. A reasonable person who had been summoned by the police ten minutes earlier, first encountered a police officer

with his sidearm drawn and who was directed to the living room by the police officers would not have believed he was free to terminate the interrogation. *See Crossley*, 224 F.3d at 862 (noting that a law enforcement officer's brandishing of a firearm is an indicium of custody). This factor weighs in favor of defendant having been in custody.

The purpose of the questioning was not coercive. The officers questioned defendant about the locations of the firearms based on Ms. Sampson's statement that defendant had firearms. As the district court properly noted, the officers had a legitimate safety interest in determining the locations of the firearms. At the time that Officer McClain questioned defendant about the locations of the firearms the officers did not know that defendant was a convicted felon, so the purpose of the questioning was limited to the officers' safety interest. (J.A. 48, 52-53, 59, 63-64.) Also, the officers were questioning defendant in the living room of the house in which he had been living. Thus, the place of the questioning was not hostile or coercive. *See Salvo*, 133 F.3d at 950 (collecting cases which found that questioning at a residence is generally not custodial). Lastly, at the time that Officer McClain asked defendant about the firearms, the questioning had lasted less than ten minutes. These factors weigh in favor of defendant not having been in custody.

Defendant was not informed that the questioning was voluntary, however, the officers never advised defendant that he was not free to leave. Though a reasonable person in defendant's position would not have believed he was free to leave, "the restraint exercised never reached the level associated with 'formal arrest or a coercive context tantamount to custody.'" *United States v. Swanson,* 341 F.3d 524, 529 (6th Cir. 2003) (quoting *Salvo*, 133

F.3d at 953). The extent to which defendant's initial encounter with Officers Golden and McClain created a "'coercive environment' . . . does not necessarily" mean defendant was subjected to custodial interrogation. *Mason*, 320 F.3d at 632 (quoting *Mathiason*, 429 U.S. at 495). Defendant's statements about the locations of the firearms were made in response to brief questioning that was done for the limited purpose of the officers' safety. *See United States v. Harris*, 611 F.2d 170, 172 (6th Cir. 1979) ("[A]s a general matter, *Miranda* warnings are not required when the questioning by police is brief and limited in purpose."). Also, the location in which the questioning took place and the length of the questioning at the time that the officers learned the locations of the firearms was not coercive. After considering the totality of the circumstances, we conclude that there was not a "'formal arrest or restraint on freedom of movement,'" so defendant was not in custody at the time he was questioned about the locations of the firearms. *Mason*, 320 F.3d at 631 (quoting *Mathiason*, 429 U.S. at 495). Therefore we affirm the district court's conclusion that defendant's statements about the locations of the firearms were not taken in violation of *Miranda*.

## III.

A district court is required to impose "'a sentence sufficient, but not greater than necessary, to comply with the purposes' of" 18 U.S.C. § 3553(a)(2). *United States v. Foreman*, 436 F.3d 638, 640 (6th Cir. 2006) (quoting 18 U.S.C. § 3553(a)). On appeal, we review a sentence for "'reasonableness.'" *United States v. Johnson*, 467 F.3d 559, 563 (6th Cir. 2006) (quoting *United States v. Jones*, 399 F.3d 640, 650 (6th Cir. 2005)). "[T]his Court's reasonableness review focuses on the factors listed in 18 U.S.C. § 3553(a), one of

which is the Sentencing Guidelines themselves." *United States v. Duckro*, 466 F.3d 438, 442 (6th Cir. 2006) (citing *United States v. McBride*, 434 F.3d 470, 476 (6th Cir. 2006)). "This reasonableness inquiry has both a procedural and a substantive component, requiring review of both the procedures used and factors considered in determining the sentence and the punishment itself." *United States v. Dexta,* 470 F.3d 612, 614 (6th Cir. 2006) (citing *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)).

Defendant argues that the district court's sentence of fifty-one months, which is at the bottom of the guidelines range, is invalid. Defendant contends that the district court erroneously perceived that it was obligated to impose a reasonable sentence. *Foreman*, 436 F.3d at 644 n.1 (6th Cir. 2006) ("[A] district court's job is not to impose a 'reasonable' sentence. . . . Reasonableness is the appellate standard of review in judging whether a district court accomplished its task."). The basis for defendant's contention is a single statement from the district court: "Considering all of those factors, it's my judgment that the guidelines are not only correctly calculated but they're also reasonable in this case." (J.A. 115.) This statement does not necessarily mean that the district court thought that it was charged with imposing a reasonable sentence, though it could support such an inference. If, however, "a district court does misstate its task as that of imposing a reasonable sentence, we review the sentence imposed under the standards explained above." *United States v. Clark*, 469 F.3d 568, 571 (6th Cir. 2006) (citing *United States v. Davis*, 458 F.3d 505, 510 (6th Cir. 2006)).

A sentence that is within the advisory guideline range is entitled to a presumption of reasonableness. *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006). Defendant's

sentence was at the bottom of the guidelines range, so the presumption of reasonableness applies. "This rebuttable presumption does not relieve the sentencing court of its obligation to explain to the parties and the reviewing court its reasons for imposing a particular sentence." *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006). "[T]he record must still reflect that the district court considered the relevant sentencing factors provided in section 3553(a)." *Ely*, 468 F.3d at 404 (citing *Foreman*, 436 F.3d at 644). A district court must provide adequate articulation of its reasoning for imposing a particular sentence in order to allow for meaningful appellate review. *Richardson*, 437 F.3d at 553-54. The district court is not required to engage in a ritualistic incantation of the § 3553(a) factors, but its opinion should be "sufficiently detailed to reflect the considerations listed in § 3553(a)." *McBride*, 434 F.3d at 474.

Defendant's sentencing transcript confirms that the district court did not rely solely on the guidelines range, but considered the § 3553(a) factors. The district court acknowledged that the guidelines sentencing range was only one factor in determining defendant's sentence. The district court considered the "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), by considering that defendant had recently received the firearms from his late father and that the firearms were discovered in response to a domestic disturbance. The district court considered the "history and characteristics of the defendant," § 3553(a)(1), by considering defendant's history of violence and defendant's family. The district court also considered the need for the sentence to reflect the seriousness of the crime and the need to protect the public from further crimes by defendant as directed by

§ 3553(a)(2)(A) and (C). The district court also discussed defendant's need for vocational training as called for by § 3553(a)(2)(D).

Defendant has not identified any specific factor listed in § 3553(a) that the district court did not consider. Additionally, at the sentencing hearing the district court addressed each argument that defendant raised. Defendant has not made any arguments to rebut the presumption that the district court's sentence within the guidelines was reasonable and the record reflects that the district court considered the relevant factors provided in § 3553(a). Accordingly, the district court's sentencing was both procedurally and substantively reasonable.

IV.

For the foregoing reasons, we **AFFIRM** the district court's denial of the motion to suppress and the sentence imposed by the district court.