*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0297p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 05-6259

LONNIE DAVIS,

*Defendant-Appellant.*

>

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 04-20439—Samuel H. Mays, Jr., District Judge.

Submitted: August 9, 2006

Decided and Filed: August 15, 2006

Before: MOORE and SUTTON, Circuit Judges; KATZ, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:** April R. Goode, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. Camille R. McMullen, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Lonnie Davis appeals his sentence for escaping from a community corrections center in violation of 18 U.S.C. § 751(a). Davis asserts that the district court erred by applying a reasonableness standard in determining his sentence rather than "impos[ing] a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]" as prescribed by 18 U.S.C. § 3553(a). Davis also argues that in imposing his thirty-seven-month sentence, the lowest within the recommended U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines") range, the district court did not adequately consider "the nature and circumstances of the offense" — namely, its nonviolent character — under § 3553(a)(1). Because no specific magic words are necessary to render a sentence reasonable, and the district court imposed a reasonable sentence after thorough consideration of the § 3553(a) factors as required following *United States v. Booker*, 543 U.S. 220 (2005), we **AFFIRM** Davis's sentence.

---

[*]The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

# I.  BACKGROUND

On May 28, 1993, Davis was sentenced to a 151-month prison term for bank robbery in violation of 18 U.S.C. § 2113.  Joint Appendix ("J.A.") at 35 (Presentence Investigation Report ("PSR") ¶ 4).  On April 30, 2004, Davis was transferred from the Federal Bureau of Prisons to Dismas Charities Community Corrections Center ("DCCCC") in Memphis, Tennessee.  J.A. at 35 (PSR ¶ 5).  Despite his October 26, 2004 release date, Davis left DCCCC without authority on May 10, 2004.  *Id.*  The United States Marshals Service arrested Davis on May 21, 2004.  J.A. at 35 (PSR ¶ 6).

Davis pleaded guilty to one count of escape under 18 U.S.C. § 751(a).  J.A. at 35 (PSR ¶ 3).  The PSR, relying on the 2004 Guidelines, noted a base offense level of thirteen under U.S.S.G. § 2P1.1(a)(1).  J.A. at 36 (PSR ¶ 11).  This was decreased four levels pursuant to § 2P1.1(b)(3) because Davis "escaped from non-secure custody of a community corrections center."  J.A. at 36 (PSR ¶ 12).  Because (1) Davis was over eighteen at the time of his escape, (2) the district court considered escape in violation of 18 U.S.C. § 751(a) to be a crime of violence,[1] and (3) Davis had three prior robbery felony convictions, Davis was sentenced as a career offender under § 4B1.1(b)(F), which raised his offense level to seventeen.[2]  J.A. at 37 (PSR ¶ 19).  Davis's offense level was reduced by three levels for acceptance of responsibility under § 3E1.1, resulting in a final offense-level calculation of fourteen.  J.A. at 37 (PSR ¶¶ 20-21).

Davis objected to the recommended sentence because he believed that he should receive a below-Guidelines sentence on the basis of a non-Guidelines departure (i.e., variance) due to the nonviolent nature of his offense under 18 U.S.C. § 3553(a).  J.A. at 24-26 (Sentencing Tr. at 9-11).  Specifically, Davis requested that the court exercise its discretion and not subject his sentence to the career-offender enhancement because, although the district court treated his escape as a crime of violence under the Guidelines, Davis's escape was nonviolent.  J.A. at 24-26 (Sentencing Tr. at 9-11).

The district court sentenced Davis to thirty-seven months of imprisonment, the lowest sentence within the recommended Guidelines range, followed by two years of supervised release.  J.A. at 30 (Sentencing Tr. at 20).  The court explained:

> So, is a Guideline sentence reasonable in this case?  Is a non Guideline sentence reasonable?  If so, what would a reasonable non Guideline sentence be?  I've said what the Guideline sentence is for incarceration purposes, 37 to 46 months.  For supervised release purposes, 2 to 5 years.  What's the nature of this offense?  The defendant is in the position where he has served a considerable period of time.  A considerable period of time.  He had a significant prior offense.  He has a long criminal history, much of it minor, but some of it is significant.

---

[1] Although Davis did not object to the district court's conclusion on this ground, this is not a settled point of law.  Our only treatment of this precise question — whether escape in violation of 18 U.S.C. § 751(a) is a crime of violence — has been in two unpublished opinions, each of which has concluded that this offense is a crime of violence.  *See United States v. Anglin*, 169 F. App'x 971, 975 (6th Cir. 2006) (unpublished opinion); *United States v. Rodgers*, No. 99-5776, 2000 WL 1434706, at *5 (6th Cir. Sept. 19, 2000) (unpublished opinion).  We have also concluded, in a published opinion, that escape in violation of a Tennessee state statute categorically constituted a crime of violence under the Guidelines.  *United States v. Harris*, 165 F.3d 1062, 1068 (6th Cir. 1999).

[2] Davis also objected to the PSR because he believed that 18 U.S.C. § 751(a)'s five-year statutory maximum for his offense meant that his offense level was governed by U.S.S.G. § 4B1.1(b)(G), which covers offenses with a statutory maximum of "[m]ore than 1 year, but less than 5 years," as opposed to § 4B1.1(b)(F), which covers offenses with a statutory maximum of "5 years or more, but less than 10 years."  J.A. at 19-24 (Sentencing Tr. at 4-9).  The district court overruled this objection, J.A. at 20-22 (Sentencing Tr. at 5-7), and Davis does not press it on appeal.

In any event, he served his time of incarceration and he had been placed in a community placement. Originally sentenced to 151 months for bank robbery in 1993. In 2004 he went to Dismas Charities Community Correction Center. That was on April the 30th. He was going to be released on October 26th of 2004. And on May 10, after he had been there a little over a week, he left, or escaped, as the report says in paragraph five, page three. Picked up his belongings and left at 10:40 a.m. Eleven days later on May 21, got picked up by the Marshal's Service in Nashville where he was with his money and his papers. Why he did that is unfathomable to me. But given his record and what he was in for originally, I don't have any problem at all with his being classified as a career offender. And I'm confident of my legal ruling on it. That's the way it is. But the question is, is that reasonable. I believe it is reasonable given the circumstances under which the defendant was serving. In looking over his criminal history, which is set out at length in the Presentence Report, particularly the fact that he had been sentenced for bank robbery.

What about the seriousness of the offense? The offense is not as serious as some offenses that one might see. But to escape from custody in that circumstance is still serious. He didn't escape violently. He didn't escape from a correctional institution, which is why his offense level is where it is. If he had escaped violently or if he had escaped from a correctional institution, he would have a much higher offense level. So that's already taken account of in the Guideline calculation. But the need to promote respect for the law here is great. One simply can't have people who decide on their own that they are going to ignore court orders and walk off from institutions to which they have been committed.

Is a Guideline range a just punishment? It seems to me it is. It seems to me that it affords adequate deterrence.

What about protecting the public from further crimes of this defendant? The defendant, one would have thought, after having been sentenced to a hundred and fifty one months, I believe it was, would have thought at some length — perhaps he did — before he simply walked off from the institution where he was confined.

Is this defendant likely to — is his offense conduct likely to recur, is there going to recidivism here? The criminal history suggests that there would be. The defendant's approach to today suggest[s] that there would be. The defendant's attitude is that he hasn't done anything very serious, all he did was, you know, violate the law, walk off and fail to complete his sentence. I consider that very serious. And I see nothing in this record that suggests to me that on release, the defendant would do anything other than what he has already done.

As far as sentencing disparities, I believe following the Guidelines in this case would be the best way to avoid unwarranted sentencing disparities. And there is no restitution issue here that I'm aware of.

So for all those reasons, I believe a Guideline sentence [in] this case is reasonable, and that's what I intend to impose. I do agree, however, with [Davis's counsel] and with the government that a low range sentence is appropriate in this case, because the defendant at one time, at least, acknowledged his guilt and entered a plea and accepted responsibility for his conduct. So he got a two level reduction for full acceptance and he got a three level — he is about to get a three level reduction if the government makes the motion. . . . And I think it is also worth considering in acceptance of responsibility going to the low end of the Guideline Range, which is 37 months.

J.A. at 26-30 (Sentencing Tr. at 16-20).

Davis then filed this timely appeal.

## II. THE DISTRICT COURT'S REFERENCE TO REASONABLENESS

Davis argues that the district court erred in its sentencing procedure by applying a reasonableness standard rather than a sufficient-but-not-greater-than-necessary standard under § 3553(a). The record indicates that the district judge may have thought his obligation was to impose a reasonable sentence. For example, the district judge ponders: "So, is a Guideline sentence reasonable in this case? Is a non Guideline sentence reasonable? If so, what would a reasonable non Guideline sentence be?" J.A. at 26 (Sentencing Tr. at 16). He also asks, "But the question is, is that reasonable. I believe it is reasonable given the circumstances under which the defendant was serving." J.A. at 27 (Sentencing Tr. at 17). Finally, he concludes that "for all those reasons, I believe a Guideline sentence [in] this case is reasonable, and that's what I intend to impose." J.A. at 29 (Sentencing Tr. at 19).

We have made clear

> that a district court's job is not to impose a "reasonable" sentence. Rather, a district court's mandate is to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of section 3553(a)(2). Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task.

*United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006); *accord United States v. Yopp*, 453 F.3d 770, 774 (6th Cir. 2006); *United States v. Vonner*, 452 F.3d 560, 565 n.2 (6th Cir. 2006). Therefore, at points during the sentencing the district court stated the wrong standard to describe the task before it — "impos[ing] a sentence sufficient but not greater than necessary" under § 3553(a).

These misstatements of the district court's sentencing task do not necessarily imply a reversible sentencing error. After *Booker*, we review a sentence for reasonableness, that is, "whether the district court's sentence is a reasonable application of Section 3553(a)." *Vonner*, 452 F.3d at 565; *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005), *cert. denied*, --- U.S. --- , 126 S. Ct. 1110 (2006). This review is not restricted to the length of the sentence — substantive reasonableness — but also incorporates a procedural component: whether the district court adequately considered and expressed its application of the relevant factors listed in 18 U.S.C. § 3553(a) to permit "'meaningful appellate review.'" *Vonner*, 452 F.3d at 567; *accord United States v. Richardson*, 437 F.3d 550, 553 (6th Cir. 2006). Although "no 'ritual incantation' of the [§ 3553(a)] factors is required," *Vonner*, 452 F.3d at 568, "there must still be sufficient evidence in the record to affirmatively demonstrate the court's consideration of them." *United States v. McBride*, 434 F.3d 470, 476 n.3 (6th Cir. 2006).

Within-Guidelines sentences such as Davis's are afforded a rebuttable presumption of reasonableness. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). This presumption is rebutted, however, when there is an "absence of evidence in the record that the district court considered all of the relevant section 3553(a) factors." *Foreman*, 436 F.3d at 644. There is no such shortcoming here. As quoted above, after calculating the appropriate Guidelines range under 18 U.S.C. § 3553(a)(4)(A), the district court addressed each of the relevant § 3553(a) factors, including "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1); "the history and characteristics of the defendant," *id.*; "the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant," *id.* § 3553(a)(2); "the need to avoid unwarranted sentence disparities," *id.* § 3553(a)(6); and "the need to provide restitution," *id.* § 3553(a)(7). The district court's thorough consideration of the § 3553(a) factors certainly allows for intelligent appellate review. *Vonner*, 452 F.3d at 567-68; *Richardson*, 437 F.3d at 553.

The rebuttable presumption of reasonableness also will not save a within-Guidelines sentence "if there is no evidence that the district court followed its statutory mandate to 'impose a sentence sufficient, but not greater than necessary' to comply with the purposes of sentencing in section 3553(a)(2)." *Foreman*, 436 F.3d at 644. In this case, despite the district court's repeated enunciation of "reasonableness," it nonetheless appears that the district court was concerned with imposing a sentence that was sufficient but no greater than necessary to comply with § 3553(a). The district judge balanced the seriousness of the offense and the need to promote respect for the law, provide just punishment and adequate deterrence, and protect the public, each of which he believed militated against a below-Guidelines sentence, with the mitigating factor of Davis's acceptance of responsibility, which he believed pointed to a sentence at the bottom of the Guidelines range. J.A. at 26-30 (Sentencing Tr. at 16-20).

Moreover, even when a Guidelines sentence is imposed, if "a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *Richardson*, 437 F.3d at 554. The district court considered Davis's argument regarding the nonviolent nature of his escape, but explained that he would still sentence Davis within the Guidelines range because the court considered Davis's offense to be quite serious and thus promoting respect for the law required such a sentence. J.A. at 28-29 (Sentencing Tr. at 18-19). The district court also explained that the significance of Davis's prior offenses, the concern of recidivism, and the need to protect the public were all factors that counseled against a below-Guidelines sentence. *Id.*

Finally, the "rebuttable presumption [of reasonableness] does not relieve the sentencing court of its obligation to explain to the parties and the reviewing court its reasons for imposing a particular sentence [within the Guidelines]." *Richardson*, 437 F.3d at 554. The district court met its obligation on this ground by explaining that a sentence at "the low end of the Guideline Range, which is 37 months," was warranted due to Davis's acceptance of responsibility. J.A. at 30 (Sentencing Tr. at 20).

It is worthy of note that *Vonner* indicated that the district court that imposed the sentence at issue in that case "appear[ed] more focused on whether the sentence given is reasonable rather than whether the sentence complies with the mandate of Section 3553(a)," but did not suggest that this in and of itself would constitute reversible error. *Vonner*, 452 F.3d at 565 n.2. Given our repeated admonition that the focus of sentencing "is on substance rather than form" and that sentencing does not require any particular "magic words," *id.* at 568 & n.4; *accord McBride*, 434 F.3d at 476 n.3, the district court's reference to a reasonableness standard does not render Davis's sentence unreasonable in the face of the district court's satisfaction of the post-*Booker* sentencing mandates.

## III. "NATURE AND CONDITIONS" FACTOR UNDER 18 U.S.C. § 3553(a)(1)

Davis also argues that his sentence is unreasonable because a thirty-seven month sentence does not adequately take into account "the nature and circumstances of the offense" — specifically, the nonviolent character of his escape — as required by 18 U.S.C. § 3553(a)(1).[3] The district judge *did* consider the nature and circumstances of the offense. He acknowledged that Davis "didn't escape violently," J.A. at 28 (Sentencing Tr. at 18), but went on to express that "[t]he defendant's

---

[3]Davis relies on *Harris*, 165 F.3d at 1068, to argue that despite the categorical nature of the crime-of-violence classification, the district court could properly consider his actual conduct in determining his sentence. *Harris* suggested "that a limited inquiry into his actual conduct at the time of his escape . . ., coupled with other relevant facts, might appropriately lead the sentencing court to conclude that a downward departure is warranted here." *Id. Harris* was decided before *Booker*. Davis no longer needs to rely on *Harris* and Guidelines departures; post-*Booker*, a district court has the discretion to impose a below-Guidelines sentence based on consideration of the actual nature of Davis's offense under 18 U.S.C. § 3553(a)(1).

attitude is that he hasn't done anything very serious, all he did was, you know, violate the law, walk off and fail to complete his sentence. I consider that very serious." J.A. at 28-29 (Sentencing Tr. at 18-19). The district court underscored his view of the seriousness of the offense in stating that "the need to promote respect for the law here is great" because "[o]ne simply can't have people who decide on their own that they are going to ignore court orders and walk off from institutions to which they have been committed." J.A. at 28 (Sentencing Tr. at 18). Although Davis happens to disagree with this perception of his escape, there is nothing unreasonable about the district court's view of the seriousness of a repeat felon escaping from custody.

In any event, Davis could have objected to his career-offender enhancement on the ground that his escape should not have been considered a crime of violence, *see* U.S.S.G. § 4B1.1(a) (requiring for career-offender status that "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense"), as we have not yet addressed this particular question in a published opinion. *See United States v. Anglin*, 169 F. App'x 971, 975 (6th Cir. 2006) (unpublished opinion) (holding that escape in violation of 18 U.S.C. § 751(a) is a crime of violence and acknowledging that only an unpublished decision of this court had previously so held). Davis did not do so. It was not unreasonable for the district court not to sentence Davis below the recommended Guidelines range because his escape was nonviolent given that Davis did not object to the career-offender enhancement on this basis and especially given the other reasonable justifications the district court offered for Davis's sentence. *See* J.A. at 26-30 (Sentencing Tr. at 16-20) (citing the need to promote respect for the law, protect the public, and provide adequate deterrence, as well as the significance of Davis's prior offenses).

Davis further claims that certain statements by the district court evidence that the court did not adequately consider the nature and circumstances of his offense. Davis takes issue with the district court's statement that the Guidelines accounted for the nonviolent nature of his escape and the fact that he escaped from a community corrections center. *See* J.A. at 28 (Sentencing Tr. at 18). The district court presumably was referring to the four-level decrease for escaping from the nonsecure custody of a community corrections center under U.S.S.G. § 2P1.1(b)(3) that Davis received and the five-level increase for use of force under § 2P1.1(b)(1) that Davis did *not* receive. Davis argues that despite these considerations, the Guidelines did not adequately take account of the circumstances of his offense because the four-level decrease under § 2P1.1(b)(3) (from thirteen to nine) had no impact on his sentence due to his increased offense level (from nine to seventeen) for being a career offender under U.S.S.G. § 4B1.1.

Davis's argument ignores two important points. First, had Davis committed a violent escape from a secure custodial institution, his offense level under the Guidelines would have been eighteen — greater than his actual offense level of seventeen (before the acceptance of responsibility reduction). In this sense, the Guidelines did account for his offense conduct. Second, the fact that being a career offender increased Davis's sentence in such a way as to negate the effect of the four-level decrease under § 2P1.1(b)(3) is merely a result of the particular balance of interests that the Guidelines have struck. Under the Guidelines, career-offender criminal history can significantly increase a sentence, even when the offense level for the instant offense is minor. The district judge did not err in relying on the particular balance of interests struck by the Guidelines given that he also thoroughly considered the § 3553(a) factors in determining Davis's sentence. Moreover, the district court was aware that following the Guidelines in this case resulted in at least a thirty-seven month sentence. The court explained why such a sentence was appropriate, and we do not deem this determination unreasonable.[4]

---

[4]The government reads Davis's brief to this court as arguing, for the first time, that he is entitled to a Guidelines-based downward departure based on the nonviolent nature of his offense. This is not the case. In fact, Davis acknowledges that the district court's decision not to apply a Guidelines departure is generally unreviewable. *McBride*, 434 F.3d at 476. Rather, Davis merely argues, as he did before the district court, *see* J.A. at 25 (Sentencing Tr. at 10),

## IV.  CONCLUSION

Because the district court adequately considered each of the 18 U.S.C. § 3553(a) factors in imposing an ultimately reasonable sentence, we **AFFIRM** the sentence imposed by the district court.

_____

that he should have been sentenced below the recommended Guidelines range given the nonviolent nature of his escape, and that the district court's failure to so sentence him rendered his sentence unreasonable.  The confusion on the part of the government may have arisen as a result of Davis's use of the general terminology "departure" instead of the more specific "non-Guidelines departure" or the alternative "variance."  *See McBride*, 434 F.3d at 477 n.5 (contrasting "Guideline departures," i.e., departures based on Chapter 5 of the Guidelines, with "Non-Guideline departures," i.e., sentences below the recommended Guidelines on the basis of the § 3553(a) factors); *United States v. Jones*, 445 F.3d 865, 873 n.1 (6th Cir. 2006) (Moore, J., dissenting) (highlighting these terms and also suggesting "variance" as a "useful" alternative to distinguish non-Guidelines departures from Guidelines departures).  The government's perception that Davis is arguing for a Guidelines departure may also stem from Davis's reliance on *Harris*, 165 F.3d at 1068, a pre-*Booker* case that mentioned the possibility of a Guidelines departure on the basis of the defendant's actual escape conduct.  In any event, the panel need not consider the government's arguments regarding a Guidelines-based downward departure, as Davis did not raise this point below, and we have considered this matter as part of our review of the sentence for reasonableness.  *See* Appellee Br. at 9, 14.