NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0032n.06
Filed: January 9, 2007

No. 05-6577

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| JOHN K. MERRELL, | ) | WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: CLAY and ROGERS, Circuit Judges; and KATZ, District Judge.[*]

**KATZ, District Judge.** This case involves a sentencing by the district court from which Defendant appeals. After the matter was fully briefed on appeal, the parties waived oral argument. This Court hereby **AFFIRMS** the sentence of the district court.

## BACKGROUND

On March 27, 2003, the Memphis Police Department executed a search warrant at the 3848 Winwood, Memphis, Tennessee ("Winwood") residence of John K. Merrell ("Merrell" or

_____

[*]The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

1

"Defendant") in a residential neighborhood. A video tape of the ensuing search showed the home, an attached shed, and the backyard of the home, where the shed was located. The video tape also showed several people, including a juvenile. The search yielded many materials commonly used to manufacture methamphetamine, including Naphtha, acetone, lithium battery parts, anhydrous ammonia, ammonia nitrate, Red Devil Lye containers, rags and towels, gas masks, and a ventilation system for the shed. J.A. 165-81, 198, 295-96. There was also a swing set, toys, and children's medical equipment. J.A. 147-55.

On March 19, 2003, Merrell was indicted by a federal grand jury on several counts. On July 2, 2003, Merrell pleaded guilty to manufacturing methamphetamine in violation of 21 U.S.C. § 841(a)(1). On January 22, 2004, the district court determined that Merrell's sentencing range under the Sentencing Guidelines was 360 months to life, based on an offense level of 40 and a Criminal History Category of III. Merrell was sentenced to 240 months imprisonment, three years supervised release, and a $100 special assessment. The 240 month sentence was the maximum under 21 U.S.C. § 841(a)(1). On June 14, 2005, this Court vacated the judgment and remanded the case pursuant to *U.S. v. Booker*, 543 U.S. 220 (2005).

On September 23, 2005, the district court conducted a re-sentencing hearing. The court applied the factors under 18 U.S.C. § 3553(a) and found that the same Guideline range applied, 360 months to life. Merrell was again sentenced to 240 months, the maximum under 21 U.S.C. § 841(a)(1). Part of the offense level was a 6-level enhancement to Merrell's guideline under U.S.S.G. § 2D1.1(b)(5)(C) for creating a substantial risk of harm to a minor.

## DISCUSSION

### I. Standard of Review

This Court will review the first issue de novo and the second issue for reasonableness.

Legal conclusions regarding application of the Sentencing Guidelines ("the Guidelines") are reviewed de novo, while factual findings are reviewed for clear error. *U.S. v. Hover*, 293 F.3d 930 (6th Cir. 2002). Whether an enhancement was properly applied is a mixed question of law and fact, which this Court reviews de novo. *U.S. v. Layne*, 324 F.3d 464, 468 (6th Cir. 2003).

The first issue before this Court is the application of section 2D1.1(b)(5)(C) of the Sentencing Guidelines, a mixed question of law and fact. This Court will review the issue de novo.

The second issue is a challenge to the district court's sentence. This Court reviews challenges to the district court's sentencing determinations for reasonableness. *Booker*, 543 U.S. at 261; *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). "'[R]eview for "reasonableness" is not limited to consideration of the length of the sentence.'" *Webb*, 403 F.3d at 383 (citing *United States v. Crosby*, 397 F.3d 103, 114 (2d Cir. 2005)). Courts must also consider "the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *Id.* This Court will also consider "whether the district court adequately considered and expressed its application of the relevant factors listed in 18 U.S.C. § 3553(a) to permit 'meaningful appellate review.'" *United States v. Davis*, 458 F.3d 505, 510 (6th Cir. 2006).

The second issue is a challenge to the district court's use of "reasonableness" language as opposed to "sufficient but not greater than necessary" language in its oral sentencing, an objection to the adequate consideration and expression of the district court's sentence. Therefore, this Court will review the district court's sentence for reasonableness.

## II. Analysis

### A. The District Court Properly Enhanced Defendant's Sentence for Posing a

**Substantial Risk of Harm to the Lives of Minors.**

Merrell appeals the district court's application of a six-level enhancement to his sentence as a result of the district court's finding that Merrell's activity created a substantial risk of harm to minors under U.S.S.G. § 2D1.1(b)(5)(C). For the following reasons, this Court agrees with the district court's finding that Merrell's conduct created a substantial risk of harm to minors and warrants a six-level enhancement under the Guidelines.

The Guidelines provide for the following enhancements:

(B) If the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to (I) human life other than a life described in subdivision (C); or (II) the environment, increase by 3 levels. If the resulting offense level is less than level 27, increase to level 27.

(C) If the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to the life of a minor or an incompetent, increase by 6 levels. If the resulting offense level is less than level 30, increase to level 30.

U.S.S.G. § 2D1.1(b)(5)(B)-(C) (2002). The accompanying application note provides a list of nonexclusive factors that a court should consider when deciding whether the defendant's methamphetamine activity created a substantial risk of harm to the lives of individuals or the environment:

(i) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored.
(ii) The manner in which hazardous or toxic substances were disposed, and the likelihood of release into the environment of hazardous or toxic substances.
(iii) The duration of the offense, and the extent of the manufacturing operation.
(iv) The location of the laboratory (e.g., whether the laboratory is located in a residential neighborhood or a remote area), and the number of human lives placed at substantial risk of harm.

U.S.S.G. § 2D1.1 at cmt. n.20 (2002).

This Court agrees with the district court's conclusion that a balancing of these factors shows that Defendant's drug manufacturing activity posed a substantial risk of harm to the lives of minors. In particular, the district court properly concluded on the basis of the evidence before it that multiple children had access to and had been present at the premises, and that Defendant's conduct thereby created a substantial risk of harm to the lives of minors.

### 1. Factors (i)-(iii): The Quantity, Disposal, and Extent of Hazardous Materials at the Premises.

When authorities searched Defendant's Winwood residence, they discovered vast quantities of ingredients, containers, and other materials used in the manufacture of methamphetamine. J.A. 174. Many of these materials were toxic, flammable, or even explosive. J.A. 170, 174, 198. Among the dangerous materials was Naphtha, a highly explosive substance that Defendant used as a solvent to make methamphetamine, that was found in the house and in the attached shed. J.A. 170, 198, 296. Authorities also found a container of acetone, which is flammable and can cause burns, J.A. 161, and remnants of lithium batteries, also used in methamphetamine manufacture, J.A. 295. In the backyard shed, officers found a twenty-five gallon tank of anhydrous ammonia, J.A. 295, a bag of ammonia nitrate, J.A. 165, and numerous empty Red Devil Lye containers, J.A. 169. A search of the backyard shed also yielded "rags and . . . towels [that] reeked of ammonia," J.A. 181, two gas masks, J.A. 169, and a complex ventilation system to filter out of the shed the acid gas that posed a risk of burns and lung damage, J.A. 164, 168, evidence that even Defendant knew how harmful the hazardous materials he was using were. Authorities also found pseudoephedrine "pill soak" jars in the house's kitchen, J.A. 154. Many of these materials, including some of the Naphtha, lithium batteries, lye, ammonia, and traces of ephedrine, were found thrown away in trash cans around the premises and

in standard city garbage cans in the driveway. J.A. 172-75, 295. Finally, upon interrogation the officers discovered that Defendant had been manufacturing methamphetamine for a long time. For at least two years prior to the search, Defendant had not even worked, but rather he earned his income by making and selling methamphetamine. J.A. 234.

These facts strongly support the district court's finding that factors (i), (ii), and (iii) of the application note to § 2D1.1(b)(5) support the application of the sentence enhancement. The sheer volume and quantity of the materials found, in addition to their dispersal across the front, inside, and back of the house, as well as the shed, satisfy factor (i). Factor (ii) is met by the lack of any specific care in disposing of the materials and substances which the Defendant knew to pose hazardous risks to human health and the environment. Finally, the duration and extent of the drug activities to be considered under factor (iii) are present as well. Defendant Merrell had earned his sole income from methamphetamine manufacture for at least two years; he had constructed an intricate ventilation system in the backyard shed, indicating a certain level of permanence to the structure and its uses; and the presence of manufacturing materials throughout the premises indicated that the manufacturing was an on-going process that took place throughout the house in addition to inside the shed.

### 2. Factor (iv): The Minors Placed at Risk of Harm.

The main factor at dispute within this issue is whether minors' lives were placed at risk of harm by the Defendant's methamphetamine-manufacturing activities. The facts strongly suggest that people, and in particular children, had their lives put at substantial risk of harm.

A court must take into account "[t]he location of the laboratory (e.g., whether the laboratory is located in a residential neighborhood or a remote area), and the number of human lives placed at

substantial risk of harm." U.S.S.G. § 2D1.1 at cmt. n.20. The fact that a methamphetamine operation took place in a residential area weighs in favor of applying an enhancement. *Layne*, 324 F.3d at 471; *see also United States v. Houchins*, 364 F.3d 182, 189 (4th Cir. 2004). This Court has recognized the dangers posed by methamphetamine operations:

> [M]ethamphetamine can be made from readily available and legal chemicals and substances, and . . . it poses serious dangers to both human life and to the environment . . . . [T]hese chemicals and substances are utilized in a manufacturing process that is unstable, volatile, and highly combustible. Even small amounts of these chemicals, when mixed improperly, can cause explosions and fires. For every one pound of methamphetamine that is produced, approximately five pounds of toxic and often lethal waste products may be left behind at the laboratory site, or disposed of in rivers, kitchen sinks, or sewage systems in an effort to conceal evidence of illegal manufacturing. More disturbing is that most of these laboratories are situated in residences, motels, trailers, and vans, and often times are operated in the presence of children.

*Layne*, 324 F.3d at 468-69.

The Winwood address is located in a residential neighborhood. J.A. 201. Several people, including minors, resided at the Winwood home. When the police conducted their search of the premises, they found the Defendant, a Ms. Linda Cooper, and a 16 year old boy, all of whom were identified as residents of the Winwood home. J.A. 147-48, 155, 295. The officers also found evidence that other minors lived in the house, a handicapped boy and a young girl. The evidence included a hospital bed and breathing equipment for a handicapped boy whom Ms. Cooper identified as a resident, J.A. 148, 175-76, equipment that had been present since at least March 2002, J.A. 225, 243. Authorities also found a child's bed covered with toys beside the bed that Ms. Cooper said was hers. J.A. 149-50. The backyard contained a swing set and toy car, near the shed where the methamphetamine was made and the toxic gas was ventilated. J.A. 155. This evidence strongly suggests that the trial court was correct in pointing out that Defendant's activities had the effect,

intentional or not, of putting minors at serious risk, and that Defendant therefore deserved an upward adjustment in accordance with Section 2D1.1(b)(5)(C). J.A. 280. Defendant argues, in his defense on this issue, that the trial court's finding was too vague to support a sentencing enhancement, and that there was no evidence that the children lived or were present at the Winwood address at the same time Defendant was actually making the drugs. Def.'s Br. at 21-26. In its oral ruling, the district court noted that "all of these children had access to the premises and all of them were at one time or another there." J.A. 258. Defendant argues that "[t]his finding is vague and does not identify any specific temporal connection of the children to the address, much less any period when the potentially dangerous chemicals were being used." Def.'s Br. at 25.

Defendant's argument contains two implicit presumptions with which this Court takes issue. First, Defendant assumes that the Guidelines require residence by children to establish a risk of harm to minors. There is no support for this reasoning in the text of the Guidelines, nor does Defendant support this presumption with caselaw. The district court found that certain minors had access to the premises and were at one time or another present at the premises. J.A. 258. A child need not live at a residence to be subject to the risk of harm caused by the manufacture of methamphetamine. Access and presence is sufficient, given the extraordinary risks inherent in the drug-making process. *See Layne*, 324 F. 3d at 468-69.

Defendant disputes that the minors discussed herein lived at the Winwood residence. There is strong evidence, including the toys, beds, and hospital equipment discussed above, to the contrary. However, even if the minors did not "live" at the Winwood home, it is conceded that they did have access to the premises, that one of them even slept at the residence the night before the search, and that hazardous materials were located throughout the premises. Therefore, because minors did have

access to the premises and were present at times, Defendant's activities created a substantial risk of harm to the lives of those minors, even if they did not "live" at the Winwood home.

The second presumption implicit in Defendant's argument is that manufacturing methamphetamine only creates a risk of harm to minors who are present on the premises at the same time the drugs are being manufactured. This is not the case. This Court has recognized the risk of the mere presence of the chemicals and wastes around a premises, particularly around children. *Layne*, 324 F.3d at 470; *see also United States v. Skelton*, 101 Fed. Appx. 89, 90-91 (6th Cir. 2004); *United States v. Massey*, 79 Fed. Appx. 832, 834, 837 (6th Cir. 2003).

As established in the above discussion of the material found around the house, Defendant did not confine his process merely to an inaccessible shed. Hazardous materials were found throughout the premises, including the kitchen, the trash, and in a tub near the swing set and toy car. While Defendant denied having used the premises for major phases of manufacturing the drug, the trial court properly credited the compelling evidence that drugs were made largely at the Winwood premises. J.A. 258; *see Layne*, 324 F.3d at 470 ("[T]he inherent danger of the chemicals found in [Defendant's] apartment militates in favor of applying § 2D1.1(b)(6)(A) here."); *United States v. Bivens*, 129 Fed.Appx. 159, 165 (6th Cir. 2005). Defendant need not have been manufacturing the drugs with minors present in order to pose a risk of harm to them. Merrell scattered hazardous materials, poisonous gases, and other chemicals and materials throughout the inside of the home, the outside, and the neighboring shed in the back yard. It was this part of his activity that created the most direct risk of harm to the lives of the minors who had access to or were ever present at the premises. Together, the balancing of these factors favors the application of a sentence enhancement for creating a substantial risk of harm to the life of a minor.

**B. Defendant's Sentence Was Reasonable.**

Defendant argues that the district court erred by imposing what it believed to be a "reasonable" sentence, instead of what this Circuit has required, "a sentence sufficient, but not greater than necessary, to comply with the purposes" of section 3553(a)(2).  Def.'s Br. at 31.

This Court reviews challenges to the district court's sentencing determinations for reasonableness.  *Booker*, 543 U.S. at 261; *Webb*, 403 F.3d at 383.  In determining reasonableness, this Court reviews the "the factors evaluated and the procedures employed by the district court in reaching its sentencing determination."  *Id.*  As discussed above, "[s]ection 3553(a) instructs district courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in that section." *United States v. Foreman*, 436 F.3d 638, 643 (6th Cir.2006) (quotations omitted). Although no longer bound by the Guidelines, district courts are still required to consider the applicable Guideline range along with the other statutory factors.  *Booker*, 543 U.S. at 245-46. "Both district courts imposing sentences in the first instance as well as appellate courts reviewing sentences on appeal are to be guided by the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir.2005).  Under this new scheme, "district courts are required to consider the applicable Guidelines sentencing range when arriving at a defendant's sentence, . . . but only as one factor of several laid out in § 3553(a)." *Id*. (internal citations omitted). As such, this Court "may conclude that a sentence is unreasonable when the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Webb*, 403 F.3d at 383 (internal quotations omitted).  Moreover, this Court will consider "whether the district court adequately considered and expressed its application of the

relevant factors listed in 18 U.S.C. § 3553(a) to permit 'meaningful appellate review.'" *Davis*, 458 F.3d at 510.

Defendant argues that the court should not have used the phrase "reasonable," but rather the "sufficient but not greater than necessary" language. *Id*. This argument constitutes a challenge to part of the procedure by which the district court reached its sentence determination, and therefore the court's use of the "reasonable" standard is reviewed for reasonableness. *Webb*, 403 F.3d at 383.

Defendant is correct that the district court's obligation is to impose a sentence sufficient but not greater than necessary to comply with the purposes of section 3553(a), and the Circuit Court's obligation is to review a sentence for "reasonableness" under *Booker*. *Foreman*, 436 F.3d at 644 n.1. However, Defendant's argument is a formalistic complaint that the district court used the wrong words despite having applied the correct law. This Court has rejected such arguments. In *United States v. Williams*, 436 F.3d 706, 709 (6th Cir. 2006), this Court held that the trial court, despite not using the specific words required by statute, "articulated its reasoning sufficiently to permit reasonable appellate review, specifying its reasons for selecting a sentence . . . ." "[T]his [C]ourt has never required the 'ritual incantation' of the factors to affirm a sentence," and neither should it require the ritual incantation of language such as that which Defendant urges here. *Id.* "[W]e do not demand that the district court recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider." *United States v. Contreras-Martinez*, 409 F.3d 1236, 1242 (10th Cir. 2005); *Williams*, 436 F.3d at 709; *see also United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005). In other words, this Court does not require the precise formalism that Defendant would have it require. Rather, this Court will review the underlying substance of a sentencing to ensure that the district court applied a reasonable sentence,

considering the factors under the Guidelines. Moreover, in *United States v. Davis*, 458 F.3d at 510-11, this Court held that the same asserted error by the district court (i.e., purporting to choose a "reasonable" sentence rather than a sentence that was "sufficient, but not greater than necessary") was not reversible error because the district court considered the relevant § 3553(a) factors.

Here, the district court considered each of the § 3553(a) factors in calculating the sentence. The court, upon resentencing, made the following remarks:

> Was that sentence reasonable under 3553? . . . This is one of the most serious cases I have ever seen . . . not only because of the ongoing nature of the activity and the location of the activity, but also the factors that led to the sentence enhancement for Guideline purposes. It is an extremely serious matter to put a large number of people at risk . . . . Because of that seriousness, it is absolutely imperative that the Court promote respect for [the] law and deter others from this sort of conduct . . . . It is imperative that the Court protect the public from other crimes of this defendant[, who] is in Criminal History Category III [for] an assault with resisting official, vandalism, and . . . another assault. [His] several encounters with the law . . . appear to be related to his drug problems. It is possible, at least, that the defendant wouldn't repeat his crimes. But should he, the risk [to the public] would be substantial . . . . I believe the defendant is in a place where he can get treatment for his condition. The sentence the Court imposed previously is . . . considerably below the Guidelines. But it is consistent with the statutory policy of the United States. Because of the statute, there is some disparity between where this defendant is and where others might be, depending upon the statute under which a fellow defendant might be charged . . . . But a lower sentence than the Court imposed would only increase that disparity, it wouldn't reduce it . . . . For all those reasons, the Court concludes that the original sentence is a reasonable sentence.

J.A. 281-83. The trial court did not use the "sufficient but not greater than necessary" language, instead opting for the "reasonableness" language. Doing so, while perhaps making appellate review less straightforward, *see United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005), does not detract from the procedural reasonableness of the sentence.

Defendant's sentence is also substantively reasonable. Ultimately, the district court sentenced Defendant to the statutory maximum, a figure one-third less than the low end of the

-12-

Guidelines range. The district judge neither "select[ed] the sentence arbitrarily, bas[ed] the sentence on impermissible factors, fail[ed] to consider pertinent § 3553(a) factors, [nor gave] an unreasonable amount of weight to any pertinent factor." *Webb*, 403 F.3d at 385. Accordingly, Defendant's sentence is substantively reasonable.

## CONCLUSION

For the reasons stated above, this Court **AFFIRMS** the district court's upward adjustment to Defendant's sentence because Defendant's conduct created a substantial risk of harm to the lives of minors, and **AFFIRMS** Merrell's sentence because it was reasonable.