NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0789n.06
Filed: December 31, 2008

No. 07-5914

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| JASON TIMOTHY WELLS, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant.* | ) | |

BEFORE:     KENNEDY, COLE, and GILMAN, Circuit Judges.

**COLE, Circuit Judge.**  Jason Timothy Wells pleaded guilty to one count of possessing a

firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924.  At sentencing, the district

court calculated an advisory range of 87 to 108 months of imprisonment, and imposed a within-

Guidelines sentence of 100 months' imprisonment with three years of supervised release.

Wells now appeals that sentence on the basis of procedural unreasonableness.  He argues that

the district court (1) failed to consider his argument for a variance and (2) erred in imposing a

"reasonable and sufficient" sentence, rather than a "sufficient, but not greater than necessary"

sentence.  For the following reasons, we **AFFIRM** the sentence imposed by the district court.

## I.  BACKGROUND

On March 29, 2006, Metropolitan Nashville Police Department ("MNPD") Lieutenant

Leander Dupie pulled over a white Honda Civic for failing to come to a complete stop at a red light.

(Tr. of Proceedings July 20, 2007 ("Hr'g Tr."), Joint Appendix ("JA") 60-61.) Wells, who was driving the vehicle, pulled over at a nearby parking lot. (JA 61.) Lieutenant Dupie exited his vehicle, made contact with Wells, and performed a routine traffic stop. (JA 60-61.) Because Wells did not have any outstanding warrants, did not appear to be intoxicated, and possessed a valid driver's license, Lieutenant Dupie was prepared to issue Wells a citation and let him go. (JA 61.)

While Lieutenant Dupie conducted the traffic stop, MNPD Officer Elizabeth Harris arrived on the scene. (*Id*.) She exited her vehicle and approached the passenger side of Wells's vehicle. (JA 62.) Officer Harris observed an open container of alcohol in the vehicle's back seat. (*Id*.) Thereafter, Lieutenant Dupie asked Wells to exit the vehicle. (*Id*.) Wells complied with the request—exiting the vehicle and following Lieutenant Dupie to the rear right side of the car. (*Id*.)

Officer Harris opened the passenger door and began to retrieve the open container. (*Id*.) However, on finding a weapon in the vehicle, she immediately exited the car, informed Lieutenant Dupie of the weapon, and advised Wells that he was under arrest. (*Id*.)

As soon as Officer Harris informed Wells that he was under arrest, he pushed her out of the way and ran toward the still running vehicle. (JA 62-63.) Thinking that Wells was going for the gun, Lieutenant Dupie grabbed Wells around the upper body and instructed him to stop. (JA 63.) Lieutenant Dupie and Wells struggled as Wells tried to get in his car and Lieutenant Dupie tried to keep him out. (*Id*.) Despite Lieutenant Dupie's efforts, Wells pinned Lieutenant Dupie's right arm between the back of the seat and Wells's body. (*Id*.) Wells then put the vehicle in gear, hit the gas, and dragged Lieutenant Dupie for approximately twenty yards. (*Id*.) Wells dragged Lieutenant Dupie along the pavement on his knees and stomach until Lieutenant Dupie was able to pull his arm

free and fall away from the car. (JA 63-64.) Wells does not contend that he stopped or slowed the car to release Lieutenant Dupie. (JA 64.)

Wells continued to drive away from the scene, exiting the parking lot and continuing on the nearby roadway. (JA 65.) Wells later abandoned the vehicle, which was found by Lieutenant Dupie and Officer Harris about one mile away. (*Id*.) After recovering Wells's vehicle, Lieutenant Dupie and Officer Harris conducted an inventory search, recovering a loaded .380-caliber Bersa semi-automatic pistol in the back seat of the vehicle, a 9-millimeter-caliber Taurus semi-automatic pistol in the trunk, ammunition, approximately 200 grams of marijuana, and the open container of alcohol. (JA 65-66; Gov't's Statement of Facts 1-2, JA 14-15.)

About an hour after the traffic stop, MNPD Officer Eric Mumaw and another officer found Wells hiding in bushes near an apartment complex. (Hr'g Tr., JA 70.) Though Wells initially resisted arrest, he was eventually apprehended and arrested. (JA 71-72.)

On December 13, 2006, the grand jury returned a one-count indictment against Wells for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924, specifically the Bersa and Taurus semi-automatic pistols found in Wells's vehicle. (Indictment, JA 6.) Wells pleaded guilty to the charge. (Pet. To Enter a Plea of Guilty 1-6, JA 7-12.)

The United States Probation Office filed a Presentence Investigation Report ("PSR") in the district court. (PSR, JA 101.) The PSR calculated Wells's base offense level at 20, since Wells committed this offense after sustaining a felony conviction for a controlled substance. (JA 105.) The PSR added four levels because Wells possessed the firearm in connection with another felony, specifically the possession with intent to distribute marijuana. (JA 106.) Six additional levels were

added, under U.S.S.G. § 3A1.2(c)(1), because Wells assaulted Lieutenant Dupie "during the course of the offense or immediate flight therefrom." (*Id.*) Finally, Wells's base offense level was decreased by three levels for accepting responsibility for the offense. (*Id.*) With the resulting offense level of 27 and a criminal history category of IV, Wells's original advisory guideline range was 100-to-125 months' imprisonment with a ten-year statutory maximum. (JA 119.)

In July 2007, Wells filed a Position Statement regarding the PSR. (Wells Position Statement, JA 16-17.) In his Position Statement, Wells did not object to the sentencing factors in the PSR, with the exception of the two-point assessment of a Sumner County conviction for DUI in paragraph 34. (JA 16.) Wells also submitted a Sentencing Memorandum in which he requested that the district court impose a "sufficient but not greater than necessary" sentence. (Sentencing Mem., JA 18.) Specifically, Wells argued that his conduct in fleeing from the police did not warrant a six-point enhancement under U.S.S.G. § 3A1.2(c)(1). (JA 22-24.) Wells also requested leniency because he had made significant strides toward rehabilitation. (JA 24-26.)

In response to Wells's Sentencing Memorandum, the Government argued that the six-level enhancement under U.S.S.G. § 3A1.2(c)(1) for assaulting a law enforcement officer was correctly applied. (Resp. to Sentencing Mem., JA 34-37.) The Government also argued that the district court should not sentence Wells below the applicable Guidelines range based on the factors set out in § 3553(a). (JA 38-41.) In its conclusion, the Government recommended a sentence at the highest possible end of Wells's Guideline range, specifically recommending that the district court impose a sentence of 120 months. (JA 41-42.) After submitting its response to Wells's Sentencing Memorandum, the Government submitted an addendum to the PSR. (Second Addendum to PSR,

JA 125-26.)  Based on Wells's objection to paragraph 34 of the PSR, the Government adjusted

Wells's criminal history category to III.  (JA 125.)  This new criminal history category resulted in

an advisory Guideline range of 87 to 108 months' imprisonment.  (*Id.*)

At sentencing, the district court addressed objections, in which the following colloquy took

place between the Court and Wells's attorney, Mr. Lenahan:

> The Court: All right.  Mr. Lenahan, we'll take up the objections, any other remaining objections that you have.
>
> Mr. Lenahan: If Your Honor please, I don't have any other objections, although --
>
> The Court: I think there was the objection for the enhancement for the bodily injury, serious bodily injury.  do [sic] you still maintain that?
>
> Mr. Lenahan: Well actually, if Your Honor please, it's not an objection to the use of that enhancement.  Again, it's a Booker[-]type argument to lessen the impact of that.
>
> The Court: Okay.  Well, with those positions, I take it that there is no issue that the total offense level is 27, the Criminal History Category is III, the guideline range is 87 to 108 months, the period of supervised release is two to three years, the fine range is $12,500 to $125,000, and there is a one hundred dollar special assessment.
>
> Mr. Lenahan: That's correct, Your Honor.

(Hr'g Tr., JA 57.)

The Government then presented two witnesses who testified regarding the circumstances of

Wells's offense, his efforts to flee the police, and his subsequent arrest.  (JA 59-74.)  Wells presented

one witness who testified regarding Wells's remorse for the incident and his apology to Lieutenant

Dupie.  (JA 75-77.)  Wells also read a letter to the district court, in which he expressed remorse for

his actions.  (JA 83-85.)

The Government then requested the highest possible Guideline-range sentence—108-months'

imprisonment. (JA 89.) The Government contended that Wells had a serious criminal history,

(JA 88), and that the district court needed to send a message to Wells and other defendants that

jeopardizing the life of an officer is a serious offense. (JA 88-89.) The Government also argued that

Wells had not done anything exceptional to justify receiving a lower sentence. (JA 89-90.)

In response, Wells's counsel gave the following argument:

Mr. Lenahan: If Your Honor please, this was a dangerous incident. My client acknowledged that. I think it's significant what he did not do. He did not use that firearm. He did not take that firearm with him. He did not confront the police with that firearm later. He did not set up some kind of hostage situation. There are many things that could have made this incident much worse.

He is in a clear period of recovery. I think he has done a remarkable job in the time he has had.

The Court: You have argued in your papers that the Court should impose no sentence greater than necessary.

Mr. Lenahan: That's right.

The Court: And he has got several convictions for evading police in '96. He's got driving erratically on I-65 in 2000. A few months later, he was evading arrest again from the officers. He was placed on -- he was given probation, but he failed to complete the school. Now, another occasion when he was stopped, he had marijuana blunts, was under the influence. The there was another occasion where he was convicted of an open container. Oh, I'm sorry, marijuana possession.

And all of these incidents involved the safety of -- another one of these incidents involved the safety of an officer.

I mean, and at a much younger age, he is involved in an incident when a firearm was pointed at an individual. So it's not just alcohol. It's drugs and weapons.

Mr. Lenahan: If Your Honor please, he does have all of those things on his record, and they are significant. And yet, when we talk about a sentence necessary but not greater than, the government wants to give him nine years, previously they wanted

to give him ten years, which is the maximum the statute carries for this offense.

Whatever sentence the Judge imposes in any of these cases, you are going to have your hands on this defendant for three more years after that on supervised release.

And the man has not been in prison. He has been in jail. He has been on probation. Almost every one of these things is alcohol-related. And like he said, that's not an excuse. But surely the Court doesn't believe that a sentence of more than something like four years would be necessary in this case for him to go to prison for the first time, and you have your hands on his life for three more years after that, and can sentence him for up to three more years after that if, in fact, he doesn't continue his recovery.

Sometimes people have to hit bottom before they can do what's right. And I think that has come for this young man. He is still going to have to prove that when he gets out of whatever sentence that you give him and gets on supervised release. And really for the rest of his life, because his problem is never going to go away. He just can't ever drink again.

But a sentence in this case that's any longer than something like that seems to me to be way beyond what's necessary, if your Honor please. Seven, eight, nine years, Your Honor? Every case is different, but this individual, it seems to me, has somewhat differentiated himself from the others who come before you.

I know that's always a problem with the Court that you have to justify the sentence in every case with the general sentencing principles. But even a sentence of, say, four years -- that's a long sentence. Followed be three years on supervised release, that's an enormous amount of time, Your Honor.

(JA 90-92.)

After the Government's response requesting a sentence at the highest end of the Guidelines

range, the Court announced the following sentence:

Mr. Wells, the Court will commit you to the custody of the Bureau of Prisons for 100 months. The Court will place you on supervised release for a period of three years. The Court will not impose a fine because you lack the resources to pay a fine. The Court must impose a special assessment of $100.

Special conditions of your supervised release will be that you participate in alcohol and drug testing and substance abuse treatment program as recommended by the officials in the Bureau of Prisons. You must abstain from the use of all alcohol, alcoholic beverages, and any drugs. Once you are released from custody, you must obtain employment and provide evidence of your employment, particularly your payroll slips, to the probation officer.

You are prohibited from carrying, owning, or possessing a firearm, destructive device or any other dangerous weapon. You must submit to the collection of DNA as directed by the Bureau of Prisons. You may not operate a motor vehicle without a valid driver's license.

The Court has imposed this sentence, Mr. Wells, because of the prior history that you have with drugs, with weapons, and with traffic offenses. The Court also took into account the very dangerous circumstances of this particular offense, particularly the serious danger to the life of a police officer. The Court was also concerned that the other sentences that had been previously imposed in this case had given you periods of probation, and apparently those sentences were not sufficient.

The Court tried to give some recognition for your efforts at rehabilitation. As I told you at the time of sentencing, if you continue to do well, you will receive sentence credits of approximately two months, 54 days a year of good time[.] [T]oward the end of the last ten percent of your sentence[,] [y]ou will be placed in a community house as a transition to resuming normal life.

And when one considers all of those circumstances, and the net effect of the sentence, I believe that that will be a sentence that is reasonable and sufficient. The Court considered all of the personal circumstances in the presentence report and was very sympathetic to the letters from your family, but, given all of the prior convictions, particularly those involving danger to others, the Court believes that this will be a particular sentence that is reasonable for this case.

(JA 93-95.) The district court further stated that Wells was recommended for a facility that gives access to drug and alcohol treatment programs. (JA 95.)

After imposing sentence, the district court allowed Wells's attorney to address the Court, but the court did not ask the parties for objections to Wells's sentence. (*Id*.) Wells's counsel requested and the district court recommended that Wells be placed in a facility as close to Nashville as

possible. (*Id*.) Wells did not raise any further objections to his sentence. This appeal followed.

## II. ANALYSIS

Wells argues that his sentence was procedurally unreasonable for two reasons. First, he argues that the district court failed to explain its reasons for rejecting Wells's argument for mitigating the U.S.S.G. § 3A1.2(c)(1) enhancement for assaulting a police officer. Second, Wells argues that the district court erred in imposing a "reasonable and sufficient" sentence rather than a sentence "sufficient, but not greater than necessary to comply with the sentencing purposes of" § 3553(a)(2). This Court finds neither argument compelling.

## A.     Standard of Review

This Court reviews a district court's sentencing determination for reasonableness under a deferential abuse-of-discretion standard. *Rita v. United States*, 127 S. Ct. 2456 (2007); *Gall v. United States*, 128 S. Ct. 586 (2007). The reasonableness inquiry generally entails review of both the sentence's procedural and substantive components. *Gall*, 128 S. Ct. at 597. Wells challenges only the procedural reasonableness of his sentence. Accordingly, we limit our review to that issue.

In reviewing sentences for procedural reasonableness, this Court "must ensure that the district court: (1) properly calculated the applicable advisory Guidelines range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articled its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range." *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). The district court also commits procedural error if the sentencing judge fails to "set forth enough

[reasoning] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 127 S. Ct. at 2468 (citing *United States v. Taylor*, 487 U.S. 326, 336-37 (1988)). After the defendant raises a particular argument in seeking a lower sentence, "the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Lalonde*, 509 F.3d 750, 770 (6th Cir. 2007) (citations omitted).

Generally, this Court is required to review for plain error when a defendant fails to object after his sentence is imposed. *See United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). However, in *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), we announced a new procedural rule requiring district courts to "ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised." *Id*. at 872. "If the district court fails to provide the parties with this opportunity, they will not have forfeited their objections and thus will not be required to demonstrate plain error on appeal." *Id*. at 872-73. Here the district court gave the parties an opportunity to speak, but it did not specifically request objections to the imposed sentence. Thus, the standard of review on appeal is reasonableness, not plain error.

## B.     The U.S.S.G. § 3A1.2(c)(1) enhancement

Wells argues that the district court erred by failing to address or explain its reasons for rejecting Wells's contention that a downward variance was warranted because his conduct was significantly less serious than other cases warranting a six-point enhancement under U.S.S.G. § 3A1.2(c)(1) for creating a substantial risk of serious bodily injury to a law enforcement officer. Wells claims that he pointed the district court to a number of cases where this Circuit has applied

the § 3A1.2(c)(1) enhancement but the relevant conduct in those cases was more serious than Wells's conduct. To be sure, Wells does not argue that his conduct falls outside of the ambit of the U.S.S.G. § 3A1.2(c)(1) six-level enhancement; rather, his position is that the district court imposed a procedurally unreasonable sentence because it failed to address his request for a downward variance.

We find that the district court did not abuse its discretion with regard to Wells's six-level enhancement under U.S.S.G. § 3A1.2(c)(1). Wells does not dispute, and we likewise find that, Wells's conduct falls within the plain language of that section.

Moreover, we are satisfied that "the sentencing judge listened . . . , considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing . . . ." *See Vonner*, 516 F.3d at 387 (citing *Rita*, 127 S. Ct. at 2469) (internal quotations omitted). Before announcing Wells's sentence, the district court heard Wells's argument for a downward variance. Wells's counsel states that he was advancing a "Booker[-]type argument to lessen the impact" of the § 3A1.2(c)(1) six-level enhancement, contending that:

> I think it's significant what he did not do. He did not use that firearm. He did not take that firearm with him. He did not confront the police with that firearm later. He did not set up some kind of hostage situation. There are many things that could have made this incident much worse.

(Hr'g Tr., JA 90.)

There is no indication that the district court failed to listen to this argument, consider the evidence supporting it, or otherwise failed to be fully aware of Wells's circumstances. The court adequately responded to Wells's claim—i.e., that his conduct was not as bad as other conduct that

typically triggers the six-level enhancement—by observing that Wells's conduct posed a "serious danger to the life of a police officer." (JA 94.) A longer monologue is not necessary. The district court fulfilled its obligation in considering Wells's arguments in determining his 100-month sentence.

Although the district court is not required to give the reasons for rejecting any and all arguments for alternative sentencing, *see Vonner*, 516 F.3d at 387, the court provided multiple reasons for its imposed sentence. The district court cited Wells's prior history of drugs and weapons offenses as well as the fact that Wells's earlier probations had not been sufficient to stem his illegal behavior. The court also gave Wells credit for his recent efforts at rehabilitation. More importantly, the record reflects the court's consideration of Wells's § 3A1.2(c)(1) enhancement argument, stating "[t]he Court also took into account the very dangerous circumstances of this particular offense, particularly the serious danger to the life of a police officer." (Hr'g Tr., JA 94.) In sum, because this record demonstrates that the district court considered Wells's arguments that his sentence should be decreased because of the nature of his enhancement conduct, we find that the district court's sentence satisfied the requirements of procedural reasonableness.

### C.     Reasonable and sufficient

Wells also argues that the district court committed procedural error because it stated it was imposing a "reasonable and sufficient" sentence, (*Id.*, JA 95), rather than "a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." *United States v. Wilms*, 495 F.3d 277, 281 (6th Cir 2007) (citations omitted). Wells is correct that the district court stated the wrong standard in announcing his sentence. However, as this Court has previously stated,

"the mere fact that the district court utters the word 'reasonableness' or recognizes that we apply a presumption of reasonableness on appeals does not render its sentencing determination procedurally unreasonable." *Id*. (citing *United States v. Davis*, 458 F.3d 505, 511 (6th Cir. 2006)).  Considering our repeated conclusion that "the focus on sentencing 'is on substance rather than form' and that sentencing does not require any particular 'magic words,'" *Davis*, 458 F.3d at 511 (quoting *Vonner*, 452 F.3d at 568 & n.4), we find that the district court's reference to "reasonable and sufficient" does not render Wells's sentence procedurally unreasonable.

### III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the sentence imposed by the district court.